[No. 15944. Department Two.—December 17, 1895.]

MARY MAHONEY ET AL., RESPONDENTS, v. SAN FRANCISCO AND SAN MATEO RAILWAY COMPANY, APPELLANT.

NEGLIGENCE—STREET RAILWAY—COLLISION—RIGHTS OF TRAVELERS IN ADVANCE OF CAR—PRESUMPTION.—A street railway company has no exclusive use of any portion of the highway, its right being to a use in common with the public, and peculiar only so far as its inability to move from its track makes it so; and travelers upon the highway going in the same direction in advance of a street-car have a right to presume that the street railway company will use its franchise in view of the rights of others to avoid a collision.

ID.—CONTRIBUTORY NEGLIGENCE—DRIVING NEAR TRACK AT NIGHT—DUTY OF ELECTRIC RAILWAY.—It is not negligence *per se* to travel along or near to the track in the same direction in which an electric car is going; but it is the duty of the electric railway to maintain a sufficient light at night upon the car to see an obstruction in time to stop the car, or to move with less velocity, so as to avoid a collision with a traveler driving upon or near the track in advance of the car.

ID.—ACTION FOR DEATH—EVIDENCE—MEANS OF CHILDREN.—In an action for death, brought by the wife and minor children of the deceased, it is erroneous to allow the plaintiffs to prove that the children have no means of their own.

ID.—IRREGULARITY — ALLUSION OF JUDGE TO POVERTY OF PLAINTIFFS — IMPROPER STATEMENTS TO JURY—NEW TRIAL.—Where it appears that after the jury had been out for several hours without agreement, they were brought into court with a statement of failure to agree, and that the judge, after finding out that the jury stood eight to three, called attention to the fact that, if the jury could not agree, all the expenses would fall upon the plaintiff, who was not well off, and informed them that the plaintiff required nine men, and that if it was possible for one' of the three to arrive at a conclusion, anything the judge could do he would cheerfully do, and stated that he would send them out once more, and give them a chance to try to agree, expressing the opinion

that, when the jury appreciated the circumstances and situation of the parties, they would make one more effort to do it, after which the jury returned a heavy verdict for the plaintiff in a few minutes, a new trial should be granted for irregularity on the part of the court.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. JOHN HUNT, Judge.

The facts are stated in the opinion of the court.

*Henley & Costello*, for Appellant.

The question of contributory negligence becomes a question of law when it arises upon undisputed and clearly ascertained facts, about which there is no conflict of evidence, and where the course of ordinary prudence is clear, and was not followed by the plaintiff. (*Flemming* v. *Western Pac. R. R. Co.*, 49 Cal. 257; *Deville* v. *Southern Pac. R. R. Co.*, 50 Cal. 383; *Glascock* v. *Central Pac. R. R. Co.*, 73 Cal. 141; *Trousclair* v. *Steamship Co.*, 80 Cal. 525; *Esrey* v. *Southern Pac. Co.*, 88 Cal. 406; *Hager* v. *Southern Pac. Co.*, 98 Cal. 309.) It is contributory negligence to drive toward and upon a railroad crossing without using any precaution to look or listen for an approaching train in time to stop before crossing the track. (*Turner* v. *Hannibal etc. R. R. Co.*, 74 Mo. 603; *Underhill* v. *Chicago etc. Ry. Co.*, 81 Mich. 43; *Nash* v. *New York Cent. etc. R. R. Co.*, 125 N. Y. 715; *Chase* v. *Maine Cent. R. R. Co.*, 78 Me. 346; *Terre Haute etc. R. R. Co.* v. *Clark*, 73 Ind. 169, 174; *McCall* v. *New York Cent. R. R. Co.*, 54 N. Y. 643; *Hanover R. R. Co.* v. *Coyle*, 55 Pa. St. 401; *Pennsylvania R. R. Co.* v. *Beale*, 73 Pa. St. 509; 13 Am. Rep. 753; *Union Pac. Ry. Co.* v. *Adams*, 33 Kan. 427; *Pennsylvania R. R. Co.* v. *Righter*, 42 N. J. L. 181, 187; *Gothard* v. *Alabama etc. R. R. Co.*, 67 Ala. 115, 119; *Louisville etc. Ry. Co.* v. *Stommel*, 126 Ind. 35; *Rhoades* v. *Chicago etc. Ry. Co.*, 58 Mich. 263; *Cincinnati etc. Co.* v. *Howard*, 124 Ind. 284; 19 Am. St. Rep. 96; *Mann* v. *Belt R. R. etc. Co.*, 128 Ind. 138; *Harris* v. *Minneapolis etc. Ry. Co.*, 37 Minn. 47; *Brown* v. *Milwaukee etc. Ry. Co.*, 22 Minn. 165; *Pence* v. *Chicago etc.*

*Ry. Co.*, 63 Iowa, 746.)  The failure to give signals does not excuse plaintiff in omitting the precaution which any person of ordinary prudence would have exercised under the circumstances.  (*Fleming* v. *Western Pac. R. R. Co.*, *supra; Glascock* v. *Central Pac. R. R. Co.*, *supra; Kenna* v. *Central Pac. R. R. Co.*, 101 Cal. 27; *Trousclair* v. *Steamship Co.*, *supra; Hager* v. *Southern-Pac. Co.*, *supra; Dascomb* v. *Buffalo etc. R. R. Co.*, 27 Barb. 221, 222; *Mackey* v. *New York Cent. R. R. Co.*, 27 Barb. 528, 542; *Benton* v. *Central R. R. Co.*, 42 Iowa, 192; *Indiana etc. Ry. Co.* v. *Hammock*, 113 Ind. 1; *Allen* v. *Maine Cent. R. R. Co.*, 82 Me. 111; *Salter* v. *Utica etc. R. R. Co.*, 75 N. Y. 279.)  The remarks and conduct of the trial judge to the jury when they returned to the courtroom and reported that they could not agree, were prejudicial to the defendant, as they were in favor of the plaintiff and tended to create a prejudice against defendant.  (*Oleson* v. *Meader*, 40 Iowa, 662; *Taylor* v. *Betsford*, 13 Johns. 487; *People* v. *Backus*, 5 Cal. 276, 277; Hayne on New Trial and Appeal, sec. 27, et seq; *McMinn* v. *Whelan*, 27 Cal. 320; *People* v. *Bowers*, 79 Cal. 416; *People* v. *Wells*, 100 Cal. 459; *People* v. *Kindleberger*, 100 Cal. 367; 2 Thompson on Trials, 1649, 1651; *McConnell* v. *State*, 22 Tex. App. 354; 58 Am. Dec. 648–55, and note; *Martin* v. *State*, 63 Miss. 505; 56 Am. Dec. 814–24, and note.)  The right of the public to drive upon or along the tracks of a street railroad, where such right exists, is subject to the requirement of due care to avoid collisions with the cars, and to give them ample room to pass, at their usual rate of speed.  (*Swain* v. *Fourteenth Street R. R. Co.*, 93 Cal. 184; *McKeever* v. *Market Street R. R. Co.*, 59 Cal. 295; *Ehrisman* v. *East Harrisburg etc. Ry. Co.*, 150 Pa. St. 180; Booth on Street Railways, 409, 410; *Rascher* v. *East Detroit etc. Ry. Co.*, 90 Mich. 413; 30 Am. St. Rep. 447.)

*Garber, Boalt & Bishop, Crittenden Thornton, F. H. Merzbach,* and *J. F. Riley,* for Respondents.

All the instructions presented by appellant were prop-

erly refused by the court, as none of them recognize any duty of the defendant to give any signals or use any precautions whatever. (*Shea* v. *Potrero etc. R. R. Co.,* 44 Cal. 419.) It is negligence to run a car along a narrow and unlighted alley in a dark night at a rate of speed that will not permit its stoppage within the distance covered by its own headlight. (*Gilmore* v. *Federal Street Ry. Co.,* 153 Pa. St. 31; 34 Am. St. Rep. 682; *Rascher* v. *East Detroit Ry. Co.,* 90 Mich. 413; 30 Am. St. Rep. 447.)

Temple, J.—This action was brought by the widow and six children of Florence Mahoney, deceased, to recover damages for his death, which they allege was caused by the negligence of the defendant.

A verdict of ten thousand dollars was rendered, and this appeal is taken by the defendant from the judgment and from an order refusing a new trial.

The defendant was engaged in operating a street railway on which cars were propelled by electricity, by the overhead or trolley system. The accident occurred on the old mission road—a public highway—within the city and county of San Francisco, at about 10 o'clock, upon a dark and foggy night. Deceased and three companions were driving along on the highway and took no pains to keep clear of the track, although there was sufficient space to enable them to do so. The driver testified at the trial: "The road was plenty wide there; there was plenty of room to keep away from the track. I kept closer to the track than the gulch to be sure. I could not tell when I would strike a boulder in the road. I did not drive far enough from the track to clear the car; my intent was to clear the ditch on the right hand side without reference to the track. I did not aim to keep clear of the track at all. I depended upon the lights coming along so we could see it or hear something and then turn out of the way. I intended to rely upon hearing or seeing. I did not stop at any time to look or listen, for the reason I had people behind and depended upon them. The noise of the vehicle and of

the wind might to some extent interfere with my hearing an approaching car, but still we did not stop."

The road at that point was descending at the rate of about two hundred and ninety feet to the mile, in the direction in which the party was traveling. Defendant's car, coming up behind, was proceeding by gravitation down the grade at a rate variously estimated as from ten to twenty miles per hour. It struck the wagon in which deceased and his companions were, killed the deceased, and very seriously wounded two others.

Appellant contends that the judgment should be reversed because it was not shown that the deceased was without fault, and because it is so clear from the evidence that there was contributory negligence that no other rational conclusion can be drawn from it.

This contention cannot be maintained. The defendant had no exclusive use of any portion of the highway. Its right was to a use in common with the public, being peculiar only so far as its inability to move from its track made it so. Travelers upon the highway had a right to presume that it would use its franchise in view of the rights of others. If the light of the car was liable to go out because the trolley frequently jumps the wire, other lights should have been employed; and, if an obstruction cannot be seen by its light in time to stop the car, it should move at less velocity. Other travelers should use reasonable diligence to avoid obstructing the track, and it may be that under some circumstances a jury would be justified in finding it negligent for one to travel along the track; but it certainly is not negligence *per se*, and I see nothing in this case which would justify our reversing the verdict; on the contrary, I do not see how the jury could have found otherwise. The law applicable to the matter is correctly stated in *Shea* v. *Potrero etc. R. R. Co.*, 44 Cal. 414.

There was no error in giving or refusing instructions to the prejudice of appellant.

Appellant claims a great many errors of law committed by the court at the trial. Most of them seem to

be trivial. It was, however, in my opinion, clear error to allow plaintiffs to prove that the children of the deceased (plaintiffs here) had no means of their own. Such testimony could have been offered for no other purpose than to create prejudice, and should have been excluded.

I think the judgment must be reversed for irregularity on the part of the court. As appears from affidavits filed on the motion for a new trial, after the jury had been out for about four and one-half hours, they were brought into court, when the following occurred:

" *The Foreman.* I think it is impossible for the jury to agree. One juror seems to be a little doubtful about some points of law.

" *The Court.* If there is anything that I can give you, instructions as to any question of law to help you to arrive at a verdict, I will be pleased to give them. If the juror who desires to ask a question will ask it, I will endeavor to answer it.

"*A Juror.* For my part I do not require any more or further information in regard to the law, because the others do not seem to agree with me.

" *The Court.* If it is about the testimony of any witness, it can be read to you.

"*A Juror.* No, sir.

" *The Court.* Is there any difference in your understanding of the instructions?

"*A Juror.* That is it.

" *The Court.* If there is, I will give it to you over again.

"*A Juror.* It don't make any difference about the instructions. That would not alter the case.

" *The Court* (to the foreman). Mr. Bent, without telling me in whose favor you stand, whether for plaintiff or defendant, how do you stand numerically, six to six, or four to eight, or how?

"*A Juror.* We stand eight to three, and it has been so since we went into the room.

" *The Court.* This trial is a very expensive one, in-

deed, for both parties, particularly to the plaintiff, who is not well off, I believe; and if you disagree all of the time we have spent is absolutely lost, and the plaintiff has to pay all of the fees of this trial and expenses, and go at it again.

"If the jurors who cannot agree upon a verdict differ in their notions of what a witness has testified to, I will be most pleased to help you out. I do not want to try the case again, and counsel do not want to try it again, and the parties do not care to provide expenses again. If you differ as to what you regard as the result of the evidence, as to what you consider the proofs, then I cannot give you any instruction on the subject. I want to ask you if that is the difference between you?

"*A Juror.* It is not a matter of instructions. We understand it.

"*The Court.* It is a matter of what conclusions you reach from the evidence?

"*A Juror.* Yes, sir.

"*The Court.* Q. Three of your number believe a certain state of facts and the other eight believe another state of facts?

"*A Juror.* Yes, sir. If you were to have your charge reread, or rather your instructions—

"*The Court.* I will do that; or if you will tell me the particular point of law troubling you.

"*A Juror.* We do not understand what this gentle-man wants to get at. He wanted to have your charge reread.

"*The Court.* What do the other two say about it?

"*A Juror.* The other two perfectly understand the evidence, I think.

"*The Court.* The plaintiff requires nine men, the same as if he had twelve on the panel. If it is possible for one of these three to arrive at a conclusion, anything I can do I will cheerfully do. There were delays in this case which make the expenses quite heavy. They will be paid to you the same whether you give a verdict or not. If any of these gentlemen who entertain these

views desire to hear me give any portion of that charge and any instructions, and will indicate about what they want, I will be pleased to do it. I do not want to read them all unless you want to hear them all. They are very long, but if you will let me know upon what point. Do you understand the last instruction which just before dinner you asked to have read to you?

"*Jurors.* Yes, sir; we understood that.

"*A Juror.* I think this gentleman wanted to know whether they had any right upon that track or not. I think he is doubtful about that.

" *The Court.* I have told you that the street is a public highway, and that persons have the right to be upon the street and to use the street either as pedestrians or riding. They had a right to be upon the highway, in law.

" *Mr. Thornton.* Can I request an instruction upon that point?

" *The Court.* Not at present.

" *Mr. Costello.* I think that it is a point for the jury to decide.

" *The Court.* As a matter of law they had a lawful right to be upon that highway; the deceased and parties in the wagon had a lawful right to be upon that highway. The fact that they may have been actually driving upon the railroad track would not make them trespassers unless they did it in view of imminent danger, because the public as well as the railroad company have an equal right to the use of that public highway. It is admitted here that it is a public highway, which means a street or place open to the public for use either as pedestrian in walking, or vehicles driving. If that is the question of law you want to ask, I will say that they did have the right to be there driving.

' Is there any other question of law that you would like to ask me?

" Because I am going to send you out once more, and give you a chance to try to agree. I think that when you appreciate the circumstances and situation of the parties you will make one more effort to do it.

"*A Juror.*  Does the law compel transportation companies to maintain a permanent light at night?

" *The Court.*  In my opinion, it is the duty of a corporation using a public street or highway at night to provide lights sufficient to apprise people lawfully upon the highway of the coming or approach of a car.  As a matter of law, I will state to you that a street-railway car company using the public highway, and using it by night, it is their duty to provide light sufficient to apprise people upon that highway, and, if traveling upon that highway, of their approach.  And if, without any fault upon the part of the persons thus traveling, without fault upon their part directly contributing to the injury, they are injured, in consequence of the failure of the company to provide light, then I say that such party is entitled to recover.  Do you understand that?

"*Jurors.*  Yes, sir.

" *Mr. Costello.*  We except to that portion of your honor's charge.

" The jury then again retired, and, after further deliberation, returned into court with a verdict for the plaintiff, and against the defendant, assessing the damages at ten thousand dollars."

It will be seen that, after finding out that the jury stood eight to three, the court called attention to the fact that all the expense would fall on the plaintiff, who was not well off.  The judge then said: " If the jurors who cannot agree upon a verdict differ," etc.  Who were these jurors?  For, evidently, certain jurors were meant, and not all.  But the judge made this matter evident, for when a juror said: " We do not understand what this gentleman wants to get at; he wanted to have your charge reread," the court asked, " What do the other two say about it?"  Why did he not say " the other eight"; for they were as much failing to agree as the two.  Evidently, it must have appeared to the jury that the court was insisting that the three, or one of them, should yield to the eight, for he proceeds to say

that plaintiff requires nine jurors. He only had eight, it seems; for why did he say *plaintiff* requires nine? Why not the defendant, or why specify either party? He finally said: "I am going to send you out once more, and give you a chance to try to agree. I think that when you appreciate the circumstances and situation of the parties you will make one more effort to do it." The affidavit shows that the jury then returned a verdict of ten thousand dollars for plaintiff, in from ten to twenty minutes.

The judgment and order are reversed and the cause remanded.

HENSHAW, J., and McFARLAND, J., concurred.

Hearing in Bank denied.