[L. A. No. 16294. In Bank.—September 20, 1937.]

BILLIE PACKARD, Respondent, v. MATTHEW JOSEPH MOORE, Appellant.

Butcher & Haines for Appellant.

Griffith & Thornburgh, Hugh M. Lindsey and Holbrook, Taylor, Tarr & Reed for Respondent.

CURTIS, J.—Appeal from a judgment in favor of plaintiff for personal injuries sustained by her in a collision between an automobile in which she was riding and one driven by the defendant. The collision occurred on the morning of July 14, 1935, at about 1:30 A. M., near the town of Sandyland on U. S. highway No. 101, between Carpenteria and Santa Barbara. Plaintiff and her companion, Jerry Rasmussen, were returning from Ventura to their home in Santa Barbara in a Buick sedan. They were accordingly traveling northerly. The defendant was returning from Santa Barbara where he had attended a theater. Defendant was driving southerly in a Ford machine, and had with him Arline Thurmon and Phoebe Bowen. They were traveling behind a third machine, a Buick coupe, driven by a Mr. Ledford and occupied by the driver, his wife, a Mr. Johnson, and a Miss Frederick. When the defendant arrived at a point about a mile north of Carpenteria, he attempted to pass the Ledford car. The highway at this point consists of three lanes plainly marked with white lines. The Ledford car was traveling in the right lane, and defendant had been

following it in the same lane. In attempting to pass the Ledford car, the defendant turned out of the right lane of the highway to his left, and when abreast of the rear end of the Ledford car collided with the car in which plaintiff was riding. Plaintiff was seriously injured. █ As in most instances in cases of this character, there is a distinct conflict in the evidence as to the cause of the collision and as to the person responsible therefor. In this action the plaintiff claims that defendant pulled out suddenly from behind the Ledford car and drove directly across the highway into the left lane of the highway in which plaintiff's machine was traveling. On the other hand, the defendant contends that as he turned out from behind the Ledford car into the center lane of the highway, the car in which plaintiff was riding swerved into the center lane and struck defendant's car. There was also a conflict in the evidence as to who was driving the car in which the plaintiff was riding. Plaintiff claims that it was being driven by her companion, Jerry Rasmussen, while the defendant contends that plaintiff herself was the driver of the car. A large portion of appellant's brief is directed to a discussion of the evidence for the purpose, not so much of showing that there is no evidence to support the verdict of the jury in favor of the plaintiff, but to impress the court with the belief that the weight of the evidence upon each of the two points above mentioned was in appellant's favor, and, therefore, the errors of law to which attention is subsequently called in his brief were so serious as to demand a reversal of the judgment. The respondent meets this argument with a recital of the evidence in her behalf, and makes the claim that this evidence outweighs in a marked degree that of appellant upon the question of the negligence of the latter and the contributory negligence of the respondent. It is sufficient for the purpose of this appeal that the jury and the trial court evidently were of the opinion that the preponderance of the evidence upon these issues was on the side of the respondent, and their determination of the matter is final in so far as a reviewing court's power extends. It might not be amiss to refer to the fact that a disinterested witness stated that the appellant was traveling over the highway at a speed of 60 miles an hour as he passed this witness, and that within twenty seconds after appellant passed he heard the crash of the collision,

The skid marks shown on the highway immediately after the collision support respondent's theory of the case rather than that of the appellant. Both respondent and her companion, Jerry Rasmussen, testified positively that appellant crossed over on to the outer lane and struck their car, while their car was being driven in this outer lane. It is true that respondent's own testimony is meager, due to the fact that she was rendered unconscious as a result of the collision, and the witness, Jerry Rasmussen, was shown to have made statements contrary to his evidence given at the trial, and particularly as to who was driving the car in which he and the respondent were riding. Immediately after the collision occurred, he stated that the respondent was driving their car when they met the appellant, and persisted in this statement for some time thereafter, when he changed his position and stated, and later testified at the trial, that he, and not the respondent, was the driver of the car in which they were riding at the time of the collision. He gave as a reason for his earlier statement that he had no license to drive a car and feared that he might be prosecuted criminally for driving without a license should he admit that he, and not the respondent, was the driver on that night. He further stated that as the car in which he and the respondent were riding was being driven in the proper lane of the highway, he did not think it made any difference as to who was the driver. Evidently both the jury and the trial court, notwithstanding the inconsistent statements of the witness, Rasmussen, found the facts to be as stated by him at the trial of the action, and in view of this finding we do not think respondent should be unduly penalized for this discrepancy in his evidence.

 A reversal of the judgment is asked on the grounds of erroneous admission of evidence and the giving of erroneous instructions. The appellant first contends that the trial court erred in the admission of evidence as to the financial condition of the respondent, and the refusal of the court to strike out such evidence. The evidence of which complaint is made was given by Dr. Hamilton, one of the respondent's witnesses. Dr. Hamilton had attended the respondent immediately after her injuries, and was called to testify in regard to her then condition. On cross-examination he was questioned regarding the bill he had rendered for his services to respondent, evidently for the purpose of showing his in-

terest in the case. In connection with this portion of his testimony the record shows the following took place: "Q. You presented this bill which is in evidence here, to Miss Packard for your services? A. Yes. Q. Did you include . . . let's see. It is made from September 14th to June 4th. Does that include your services in connection with the attending of the examination by Dr. Van Paing and Dr. Stevens? A. I saw her there just two days ago. How could it? Q. I just want to know. Does it include any future services that you may render? A. It includes services rendered. Q. Up to that time? A. As the statement shows. Q. Of course, you expect to be paid for the time you have given since? A. I do not expect to be paid. Q. Oh, I see. You have answered the question. Mr. Thornburg: He may explain it. The Court: You may explain your answer, doctor. A. I can explain why I do not expect to be paid. Miss Packard is a penniless girl and she has no money to fight this through the higher court. Mr. Butcher: I move to strike that out as a prejudicial statement, volunteered by the witness. The Court: I do not know. This subject was opened up by you. Mr. Thornburg: You opened up the subject by attempting to show he was interested in getting some more money. The Court: It is a statement, as I see it, in explanation of his answer, which would tend to overcome the inferences which your question naturally gives rise to."

This motion to strike was denied on the ground that the witness had a right to explain his previous answer and the fact that in so explaining he gave evidence which otherwise would have been objectionable did not render said evidence inadmissible. It is undoubtedly the settled law in this state that in a personal injury action evidence of the financial condition of the injured party is inadmissible. (8 Cal. Jur., p. 898; *Shea* v. *Potrero & Bay View R. R. Co.*, 44 Cal. 414; *Malone* v. *Hawley*, 46 Cal. 409; *Mahoney* v. *San Francisco & San Mateo Ry. Co.*, 110 Cal. 471 [42 Pac. 968, 43 Pac. 518]; *Green* v. *Southern Pac. Co.*, 122 Cal. 563 [55 Pac. 577]; *Story* v. *Green*, 164 Cal. 768 [130 Pac. 870, Ann. Cas. 1914B, 961]; *Ensign* v. *Southern Pac. Co.*, 193 Cal. 311 [223 Pac. 953]; *Wright* v. *Broadway Department Store*, 199 Cal. 562 [250 Pac. 572].) In each of these cases the objectionable evidence was evidently admitted for the express purpose and with the intent of showing that the plaintiff was

without financial means. It was not admitted for any limited or special purpose but solely to show the poverty of the plaintiff. The case of *Mahoney* v. *San Francisco & San Mateo Ry. Co., supra,* is typical of the other cases cited. In that case a widow and her six children were suing to recover damages for the death of the husband and father, which was alleged to have been caused by the negligence of the defendant. The plaintiffs were allowed to prove that the children had no means of their own. In reversing the judgment in favor of the plaintiffs the court said: ''Such testimony could have been offered for no other purpose than to create prejudice, and should have been excluded.'' These cases differ materially from the instant case where the evidence of plaintiff's financial condition was admitted primarily for the purpose of explaining the previous answer of the witness, and, if it was admissible for that purpose, the fact that it may have prejudiced the defendant did not render it inadmissible. (*People* v. *Burke,* 18 Cal. App. 72 [122 Pac. 435].) The present action in respect to the question under discussion is much like the case of *Muller* v. *Hale,* 138 Cal. 163, 167 [71 Pac. 81, 82]. In that case counsel for the defendant in cross-examining the plaintiff drew from her the statement that she had received no medical treatment since she left the hospital. On redirect examination the plaintiff was asked why she had not received medical treatment since leaving the hospital and replied, ''Because I was financially embarrassed and my circumstances did not allow me.'' This court held the evidence was admissible as it was ''simply in line of explaining why she did not have any medical attendance, and was entirely proper''. Practically the same condition in its legal aspect was shown to exist in the proceedings in the present action concerning the testimony of Dr. Hamilton. Had no explanation been made of his answer, it might have been inferred by the jury that the relations existing between Dr. Hamilton and the plaintiff were of such a friendly nature that the doctor was rendering her medical service without charge. Such an inference, if permitted to continue, would have shown that the doctor had such a personal interest in the plaintiff that he was treating her free of charge, and would have materially weakened the effect of his evidence to the prejudice of the plaintiff. The evidence was admissible

only for the purpose of explaining the previous answer of the doctor, and the defendant was entitled to an instruction to that effect. However, he failed to ask for such an instruction. He cannot therefore, complain of the absence of such an instruction.

In the following cases it was held that evidence of the poverty of the plaintiff under circumstances similar to those in the instant case was properly admitted: *Hughes* v. *Quackenbush*, 1 Cal. App. (2d) 349 [37 Pac. (2d) 99]; *McNally* v. *Casner*, 128 Cal. App. 680 [18 Pac. (2d) 94]; *Ashley* v. *Rivera*, 220 Cal. 75 [29 Pac. (2d) 199]. From these authorities we conclude that the trial court did not err in permitting Dr. Hamilton to explain his answer as to the reason for his not expecting payment for certain services rendered by him to the plaintiff in this action.

The further contention is made by the appellant that the court erred in not declaring a mistrial and dismissing the jury by reason of the injection into the case of evidence that defendant carried indemnity insurance. The criticized evidence was given by Irene Fenton, a nurse at the hospital where the plaintiff was confined after her injuries. She was describing the visit of Dr. Stevens to the plaintiff while the latter was a patient at said hospital. In the course of her narration of the events transpiring during this visit the witness stated: "And he [Dr. Stevens, addressing the plaintiff] said: 'I would like to ask you a few questions.' . . . He leaned over and examined the scar on her face, and I believe she said . . . no, he asked if she had any other injuries, and she said, 'I have some bruises on my knees', and he reached down and pulled the covers back. He just pulled them off her like that [illustrating] and she grabbed them back, and she said, 'Don't uncover me here before God and everybody'. And he reached down and took hold of the covers, and he said, 'Well, I am not doing this for pleasure. The insurance company sent me'." Counsel for the defendant immediately moved to strike out the statement, "The insurance company sent me". The attorney for plaintiff consented to the motion, stating, "I did not know it was coming". Counsel for defendant further assigned the statement of the witness as prejudicial misconduct, and requested the court to declare a mistrial. The court granted the motion to strike out the objectionable evidence of the witness that the doctor stated

that he was sent by the insurance company, but denied defendant's motion to declare a mistrial.

In *Citti* v. *Bava,* 204 Cal. 136, 138 [266 Pac. 954], a judgment in favor of the plaintiff in an action to recover damages for personal injuries was reversed on the ground that the defendant was prejudiced by the admission of evidence that he carried indemnity insurance. In that case the court stated: "The evident purpose of counsel for the plaintiff was to prove the fact of the compromise and settlement with Aftergut by the insurance carrier of the defendant as an admission of liability on the part of the defendant and to get before the jury the fact that the defendant was indemnified by a policy of insurance." In *Squires* v. *Riffe,* 211 Cal. 370, 374 [295 Pac. 517], this court reversed a judgment in a similar action on the ground that evidence that the defendant carried insurance was improperly admitted. In that case the defendant objected to a question propounded to plaintiff while on the witness stand on the ground that it was an attempt to bring in extraneous matters before the court. The objection was overruled, and the plaintiff answering the question detailed a conversation with the defendant in which she stated that she was insured. The court held that, "It must be presumed that counsel for the plaintiff knew the answer which his client would give to the objectionable question", and citing *Citti* v. *Bava, supra,* reversed the judgment. In *Rising* v. *Veatch,* 117 Cal. App. 404, 406 [3 Pac. (2d) 1023], the same question was involved. The objectionable testimony was given by the plaintiff in answer to a question propounded to her by her attorney "over repeated objections of appellant's counsel". The court in that action followed the case of *Squires* v. *Riffe, supra,* and reversed the judgment in favor of plaintiff on the ground that "the question which elicited the answer complained of was put to counsel's client, and counsel either knew or should have known the answer to be expected". The appellant cites and relies upon these decisions in support of his contention that the judgment herein should be reversed. In each of these cases the decision holding the evidence that defendant carried liability insurance was prejudicial error was based upon the fact that the attorney for the plaintiff knew or was presumed to have known that the answer of the witness would refer to the matter of insurance and that he intentionally asked the objectionable

question for that purpose. We do not think in the instant case that the same condition existed as was shown in those cases. Immediately upon the witness's reference to the insurance of the defendant, the attorney for plaintiff asked to have the witness's statement stricken out, and disclaimed any knowledge that the witness would so testify. It further appears that witness under examination was not the client of the attorney, and that the attorney had had but little opportunity to discuss with her the nature of her evidence before she was called to testify. Under these conditions we do not think that we can with any fairness indulge in the presumption that the attorney knew what the testimony of the witness would be or that he was guilty of bad faith in injecting the objectionable evidence into the case. The reference by the witness to insurance came at the close of a rather lengthy answer, and it is apparent her statement that the doctor said that, ''The insurance company sent me'', was merely given in an attempt to bring before the court the conduct of the doctor in his visit to the plaintiff. The case in our opinion is governed by the decision in *Hughes* v. *Quackenbush,* 1 Cal. App. 349, 358 [37 Pac. (2d) 99, 103], where the court states the proper rule as follows: ''While courts have condemned repeatedly attempts to bring before a jury the fact that insurance exists, their condemnation extends only to cases where there is an 'avowed purpose and successful attempt' to bring the fact before the jury. It does not extend to cases where the information comes in, incidentally, in attempting to prove other facts, or where the record does not show that the particular answer was sought or anticipated.''

There is another all sufficient reason why the evidence of Irene Fenton, as to the statement of the doctor that the insurance company sent him, was not prejudicial to the defendant's case. There was already evidence in the case that the defendant was insured. This evidence was given by a witness who stated that the defendant told him, ''he [defendant] was traveling approximately 60, but he was going to say around 45 because of his insurance''. This evidence was received without objection on defendant's part and no motion was made to strike it from the record. As testimony of defendant's insurance was before the court and jury without objection by the defendant, evidence of the same char-

acter could not seriously, if at all, prejudice the rights of the defendant.

■ Appellant's objection to the introduction of photographs of the plaintiff showing the nature of the injuries upon her face while in the hospital is without merit. The photographs portrayed possibly more strikingly plaintiff's injuries than oral testimony could have done. This fact did not render them inadmissible. The jury was entitled to know of her true condition and if that fact could be more accurately portrayed by photographs than by the testimony of the doctor, or others, it was the right of the plaintiff to resort to that method of proof. (*Crabbe* v. *Rhoades,* 101 Cal. App. 503 [282 Pac. 10] ; 10 Cal. Jur., p. 896.) The case of *O'Meara* v. *Haiden,* 204 Cal. 354 [268 Pac. 334, 60 A. L. R. 1381], is not applicable to the facts in this case.

■ Appellant attacks instructions numbered 18 and 31, given by the court at the request of the respondent. Instruction 18 is as follows: "If you find from the preponderance of the evidence that any facts disclosed by the evidence contradict or outweigh the testimony of any witness regarding the manner in which the accident occurred, if you find it did occur, then you are at liberty to accept such facts and disregard the testimony of the witness." Appellant contends that the reference to "any facts" in the instruction must be held to mean "any physical facts", and upon this premise builds up a most formidable argument.

The court refused to give a similar instruction in which the word, "facts" appearing in the instruction was preceded by the word, "physical". Evidently the trial court did not consider the two instructions identical, or that the instruction given should be construed as referring to "physical facts". In view of this action of the trial court, we are not inclined to agree with the appellant's construction of this instruction. We see nothing objectionable regarding the instruction given. The jury, in effect, was told that any fact proven by a preponderance of the evidence would outweigh the testimony of any witness whose testimony was inconsistent with the proven fact. This must necessarily be so. A fact in the case could not be proven by the preponderance of the evidence unless it outweighed every other fact attempted to be proven in the case upon the same issue. The instruction, while not stated in as clear language as we would desire, did

not misstate the law upon the subject of the preponderance of the evidence, and we do not believe that the jury was misled thereby.

By instruction No. 31 the court instructed the jury that the burden was upon the defendant to prove contributory negligence by a preponderance of evidence. The instruction was not a formula instruction and when considered in connection with other instructions of the court could not have prejudiced the appellant. The criticized instruction finds an almost exact parallel in one discussed by this court in the case of *Olsen* v. *Standard Oil Co.*, 188 Cal. 20, 25 [204 Pac. 393], where the question now raised by the appellant was disposed of in the following language: ''The argument apparently assumes that the jury must have understood it [the instruction] to mean that in deciding the question they could consider only the evidence introduced by the defendant and that evidence produced by the plaintiff tending to show contributory negligence could not be considered. There was nothing in the instruction on the subject that could be so understood.''

This concludes a discussion of all questions raised by the appellant in support of his appeal. In our opinion none of them, nor all of them collectively, would justify a reversal of the judgment.

The judgment is affirmed.

Shenk, J., Seawell, J., Langdon, J., Edmonds, J., and. Waste, C. J., concurred.