[Civ. No. 23775. Second Dist., Div. Three. Dec. 15, 1959.]

KATHERINE FLYNN, Respondent, v. GRAND CENTRAL PUBLIC MARKET, INC. (a Partnership) et al., Defendants; MARGARET L. POSSON et al., Appellants.

244

Eugene S. Ives and Martin J. Kirwan for Appellants.

Harney, Drummond & Dorsey and David M. Harney for Respondent.

VALLÉE, J.—Appeal by defendants from a judgment for plaintiff entered on a jury verdict in an action for damages for personal injuries. A motion for a new trial was made and denied.

Defendants Posson, Lyon, and Laughlin operate a large retail food market in Los Angeles under the name "Grand Central Public Market." They lease various parts of the market to persons engaged in the business of selling food at

retail. Defendant Melton was one of such persons. He operated a retail meat sales department which was located directly across the aisle from space occupied by Norman Burgess. The counters of Melton and Burgess were near the west end of the market. The space occupied by Burgess was south of that occupied by Melton. At the extreme east end of the space occupied by Burgess was a cold storage bin used by Melton to store meat. An aisle about 3 to 4 feet wide separated the Melton and Burgess counters. It was the practice of Melton's employees to take meat from the cold storage bin and move it across the aisle to Melton's display cases for sale to the public.

On August 22, 1956, plaintiff was standing at the Burgess counter in the process of buying something and talking to the man behind the counter. She was standing very close to the counter, leaning on it, with her hands on the counter. As she was standing there, she was struck on the hip in the rear by a meat wagon described as being like ''an Irish donkey cart.'' She was thrown, but held on to the counter for fear she would fall under the cart; her foot was raised off the floor; the blow partly turned her around and pushed her along the counter a foot or more; she was stunned and in intense pain. At no time prior to the accident did plaintiff back up or make any unusual movement.

One of Melton's employees, Greenfield, ran the cart into the right hip of plaintiff. He was moving meat from the cold storage bin to the meat counter. He was pulling the cart. Another Melton employee was pushing it. Greenfield was holding a container on the cart with one hand. They were pulling the cart backwards. Greenfield's back was toward plaintiff. He was not looking where he was going. Neither he nor the other employee gave any warning. Greenfield did not know plaintiff was there until he ran into her. He testified plaintiff was standing up against the counter at the time she was struck. He knew that people would be shopping at the time.

 The court refused to give an instruction on contributory negligence proffered by defendants. They assert error. There was no error. The instruction was properly refused. There was not the slightest evidence, or inference from evidence, of negligence on plaintiff's part. The evidence is without conflict that plaintiff was standing close to the counter, buying sea food, when she was struck by the cart without warning. She did not move or contribute in any way to the happening of the accident.

Defendants contend the court erroneously refused to grant their motion for a mistrial on the ground they were prejudiced and denied a fair trial because of the admission of the existence of insurance in the proceeding. The point is entirely without merit. The assistant superintendent of the market was on the stand under examination by counsel for plaintiff. He testified the market had men who walked the floor constantly, supervising, and making sure everything is done in an orderly manner. The following then occurred: "Q. And those people are employed by the Grand Central Public Market? A. They are, sir. Q. And they have the job of protecting the customers who may be injured by carts, for example, running into them; is that correct? A. Not that particular incident, no. Q. That is not part of their job? A. Well, they do make the reports to the insurance companies. Q. Did you get a report about this particular accident? A. I made the report. Q. You did? A. Yes, sir. Q. Do you have a copy of the report? A. No, I don't. Q. Does your counsel have it, do you know? A. I presume he has; I don't know. MR. HARNEY: Do you have that, counsel? MR. KIRWAN: I don't have a report myself from him." Counsel for defendants then moved for a mistrial. In stating the motion, he said he had warned the witness "not to mention anything about insurance." The motion was denied. No motion to strike the reference to insurance was made. Thereafter, the proceeding set out in the margin occurred.[1]

It was the assistant superintendent of the market, not counsel for plaintiff, who brought out the existence of insurance. He voluntarily said that people employed by the market "make the reports to the insurance companies." Counsel for plaintiff did not pursue or emphasize the subject. There was no wrongful injection of insurance into the case by plaintiff's

---

[1] The court addressed counsel for defendants: "Why don't you instruct your witness to refrain from referring to insurance? MR. KIRWAN: I will do it again. THE COURT: Call him aside and tell him so you don't get into that predicament. Objection is overruled. (At this point, Mr. Abbott, the witness, was called to the bench and outside the hearing of the jury instructed by Mr. Kirwan as follows:) MR. KIRWAN: For the purpose of the record, I have called you over here and I am going to instruct you not to mention anything about insurance when you are being questioned about this report. And in the presence of the court and the attorney for the plaintiff at this time, before you took the stand before, did I say anything to you about insurance? MR. ABBOTT: No. MR. KIRWAN: Did I say anything to you about not mentioning insurance? MR. ABBOTT: No, sir. MR. KIRWAN: When you were sitting here beside me? You don't recall it? MR. ABBOTT: I don't recall it, no. THE COURT: Well, he is asking you not to do it now."

counsel. At the request of defendants the court instructed the jury as follows:

"You are reminded that no insurance company is a party to this action and that whether any party is insured has no bearing whatsoever on any issue that you must decide. Therefore, the oath you took as jurors requires that you refrain from any inference, speculation or discussion about insurance."

In *Packard* v. *Moore*, 9 Cal.2d 571 [71 P.2d 922], a witness under examination by plaintiff, in relating a conversation with a doctor, stated the doctor said "The insurance company sent me." The court held (p. 580):

"The reference by the witness to insurance came at the close of a rather lengthy answer, and it is apparent her statement that the doctor said that, 'The insurance company sent me,' was merely given in an attempt to bring before the court the conduct of the doctor in his visit to the plaintiff. The case in our opinion is governed by the decision in *Hughes* v. *Quackenbush*, 1 Cal.App. 349, 358 [37 P.2d 99, 103], where the court states the proper rule as follows: 'While courts have condemned repeatedly attempts to bring before a jury the fact that insurance exists, their condemnation extends only to cases where there is an "avowed purpose and successful attempt" to bring the fact before the jury. It does not extend to cases where the information comes in, incidentally, in attempting to prove other facts, or where the record does not show that the particular answer was sought or anticipated.' "

Witkin says "it seems highly unrealistic to suppose that automobile-owning jurors are unaware of the position of insurers in the defense of personal injury actions, particularly since the recent inauguration by these companies of a national publicity campaign against high verdicts. And in operation the rule is largely one of form and tactics, for there are a number of situations in which the reference is either entirely proper or, if improper, does not constitute reversible error." (2 Witkin, California Procedure, p. 1738.) (See the learned discussion of the subject written by Mr. Justice Ashburn in *Causey* v. *Cornelius*, 164 Cal.App.2d 269 [330 P.2d 468].)

The court did not err in denying the motion for a mistrial.

█ · It is contended the court erred in instructing the jury that in assessing damages they could consider the reasonable value of the time lost from work. The court gave this instruction: "Should your decision be to award damages to the plaintiff, in arriving at the amount of the award, you shall

determine the item of claimed detriment which I now am about to mention, provided that you find it to have been suffered by her, and as a proximate result of defendant's negligence."

It then gave this one: "The reasonable value of the time lost, *if any,* from her employment by said plaintiff since her injury wherein she has been unable to pursue her occupation. In determining this amount, you should consider evidence of said plaintiff's earning capacity, her earnings, and the manner in which she ordinarily occupied her time before the injury, and find what she was reasonably certain to have earned in the time lost had she not been disabled." (Emphasis added.)

Defendants assign error in the giving of the latter instruction. The court also gave the instruction set out in the margin.[2]

Plaintiff was in excellent health before the accident. She had been employed in a cafeteria at the University of Southern California from January to April 1955, earning $371. At the time of the accident she had a daughter who was planning to marry and leave the family home. She had planned to resume employment about six months after the accident. Because of the disability resulting from her injuries, she was unable to do so. She testified that if it had not been for the accident she would have been working for the year and a half before

---

[2] "If you should find that plaintiff is entitled to a verdict and should find also that her power to earn money has been so impaired by the injury in question that she will suffer a pecuniary loss in the future from that impairment, then you will award her such sum as will compensate her reasonably for any such future detriment she is reasonably certain to suffer.

"In fixing this amount you may consider what said plaintiff's health, physical ability and earning power were before the accident and what they are now, the nature and extent of her injuries, whether or not they are reasonably certain to be permanent, or if not permanent, the extent of their duration, all to the end of determining the effect of her injuries upon her future earning capacity and the present value of the loss so suffered.

"Even if a person was not gainfully employed at the time of the alleged wrongful conduct whereby she was injured, if a partial or total disability resulting from such injury is reasonably certain to continue for any period of time in the future, the person nevertheless could suffer pecuniary loss from the disability. Unemployment of a person able to work may be only temporary, and one's time can have a value to herself so that if its usefulness is lost and must be replaced through the services of others, the cost thereof will be an element of damage. Three pertinent questions are: Did an injured person who was not gainfully employed before the injury, nevertheless, have earning power? If she had earning power, would she probably have made use of it in the future if she had not been injured? To what extent has any use she probably would have made of her earning power been reduced as a proximate result of the injury in question?"

the trial. The court did not err in giving the instruction respecting the reasonable value of time lost, *if any*, from employment.

The jury awarded plaintiff $20,000 damages. Defendants contend the verdict is excessive. The presumptions and rule governing our consideration of the point have been iterated innumerable times and need not be repeated. (4 Cal. Jur.2d 494, § 613.) The presumptions have added strength when the trial judge reviews the verdict on a motion for a new trial and declines to disturb it, as he did in the present case. (4 Cal.Jur.2d 451, § 577.)

Plaintiff was 49 years of age at the time of the accident. She had a life expectancy in excess of 21.37 years. She received a sudden, violent, direct blow over the right sacroiliac joint region, which was damaged over the coccyx. She was injured in the area of the pelvis. Some of the nerves which come out of the spine in the area of the sacrum were pulled and strained. The muscles, ligaments, and soft tissues in the area of the injury were torn; and the nerve roots, as they come out of the spine and through the pelvis, were torn, stretched, bruised, and bled. She sustained a direct blow from the meat cart over the sacroiliac joint, on the coccyx area, and along the sciatic nerve. She had a positive and abnormal ''Lasegue sign,'' which indicates a stretching of the sciatic nerve producing pain in the nerve. She suffered a traumatic neuritis of the sciatic nerve. Plaintiff was given short-wave therapy treatments, vitamin injections, electric muscle stimulation, procaine, and cortisone. She was in a hospital about two weeks in constant traction. She wore a large brace which covered most of the injured area. The physician who attended her diagnosed a possible herniated disk.

At the time of trial plaintiff was still having pain most of the time in the lower back, in the area of the sacrum, in the sacroiliac joint area on the right side, and in the sciatic nerve. The pain starts in the hip and radiates down along the back of the thigh to about the knee. Neuritis is a dull, steady, aching pain, a deep-seated heavy pain like a heavy toothache; it is deep inside, almost to the bone; there is a sharp pain which radiates along the course of the nerve. When one stretches the nerve, the pain is greatly increased. At the time of the trial plaintiff had this neuritis. Plaintiff also has leftovers of the injuries to the soft tissues about the bones, and the formation of scar tissue. The scar tissue

squeezes down on the ordinary nerve tissue: fibrositis. She has a chronic posttraumatic fibrositis involving the roots of the right sciatic nerve. Her condition is permanent and stationary and nothing can be done to improve it. She stands and walks with the typical limp and slight list of a person with severe sciatica or a ruptured disk. Since the accident, plaintiff has not been able to do all her household duties; her husband does most of the housework. Plaintiff's medical, hospital, and nursing expenses were about $2,000.

There was no showing of passion or prejudice on the part of the jury in arriving at the amount of the verdict. Where there is no such showing, it cannot be said that the amount is excessive as a matter of law. (*Werkman* v. *Howard Zink Corp.*, 97 Cal.App.2d 418, 422 [218 P.2d 43].) We cannot say that the amount of damages awarded is so obviously disproportionate to the injuries as to justify the conclusion that the verdict was not the result of the cool and dispassionate discretion of the jury. (For cases in which the verdicts were comparable, see *Humble* v. *Union Pacific R. R. Co.*, 90 Cal. App.2d 276 [202 P.2d 791]; *Eagans* v. *Key System Transit Lines*, 158 Cal.App.2d 13 [321 P.2d 891].)

Affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied January 14, 1960, and appellants' petition for a hearing by the Supreme Court was denied February 10, 1960.