[Civ. No. 15861.   Second Dist., Div. Two.   Oct. 17, 1947.]

CARL F. STONE et al., Appellants, v. LOS ANGELES COUNTY FLOOD CONTROL DISTRICT, Respondent.

LILLIAN CANDACE HOUSE, Appellant, v. LOS ANGELES COUNTY FLOOD CONTROL DISTRICT, Respondent, and consolidated cases.

Henry M. Lee, Hill, Morgan & Farrer, Charles P. McCarthy, Harry J. McClean and Latham & Watkins for Appellants.

Harold W. Kennedy, County Counsel, and Roy W. Dowds, Assistant County Counsel, for Respondent.

WILSON, J.—Eleven actions against respondent for damages resulting from the overflow of waters of the Los Angeles River during a storm in March, 1938, were consolidated and tried before a jury. By stipulation, the actions were first tried upon the question of respondent's liability. At the close of the evidence on this phase of the case respondent made a motion for a nonsuit and a motion for a directed verdict, both of which were denied. The jury returned a verdict in favor of appellants and against respondent as to the latter's liability. The trial of the causes then proceeded before the same jury upon the question of damages sustained by the several appellants. The jury returned verdicts in their favor, assessing the damages of each separately. Respondent made a motion for judgment in its favor notwithstanding the verdicts, which the court denied. Thereafter respondent presented a motion for a new trial. This motion was granted. The appeal is from the order granting a new trial.

Since there was evidence of sufficient substantiality to have sustained a verdict in favor of appellants, the court was correct in denying respondent's motions for a nonsuit and for a directed verdict (*Weck* v. *Los Angeles County Flood Control District*, 80 Cal.App.2d 182, 190 [181 P.2d 935, 940] and cases cited) and its motion for a judgment notwithstanding the verdict. (*Kataoka* v. *May Dept. Stores Co.*, 60 Cal.App.2d 177, 181 [140 P.2d 467] and cases cited.) ■ However, in considering a motion for a new trial the court is guided by a different rule from that which controls in passing on the motions above mentioned. It "cannot rest upon a conflict in the evidence, but must weigh and consider the evidence for both parties, and determine for itself the just conclusion to be drawn from it." If the judge is convinced that the verdict is clearly against the weight of the evidence it is his duty to grant a new trial even though there may have been some conflict in it. (*Green* v. *Soule*, 145 Cal. 96, 102 [78 P. 337]; *Imperial-Yuma etc. Assn.* v. *Shields*, 74 Cal.App.2d 932, 935 [169 P.2d 671].)

■ Since the granting of a motion for a new trial rests so completely within the discretion of the trial judge, his order will not be interfered with by the reviewing court unless it appears that there has been a manifest and unmistakable abuse of discretion. (*Jordan* v. *Schrieber*, 74 Cal.App.2d 800, 805 [169 P.2d 394]; *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338], and cases cited; *Gallichotte* v. *California Mut. B. & L. Assn.*, 23 Cal.App.2d 570, 576 [74 P.2d 73, 535].) ■ On appeal from an order granting a new trial all presumptions are in favor of the order as against the verdict ■ and it will be affirmed if it can be sustained on any ground although the reviewing court might have ruled differently in the first instance. (*Mazzotta* v. *Los Angeles Ry. Corp., supra.*)

■ If the evidence is uncontradicted a trial judge may nevertheless draw inferences from it opposed to those drawn by the jury and it is only when, as a matter of law, there is no substantial evidence to support a judgment contrary to the verdict of the jury that an appellate court will reverse the order granting a new trial. (*Brooks* v. *Metropolitian Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689]; *Williams* v. *Field Transportation Co.*, 28 Cal.2d 696, 698 [171 P.2d 722].)

The issue before us is not the simple question whether the evidence is sufficient to support the verdict. We must deter-

mine whether (1) there is a conflict in the evidence and if so (2) whether the conflict is such that we may hold that the court did not abuse its discretion in setting aside the verdict and ordering a new trial.

The allegations in the pleadings of the several appellants upon which they base their claims against respondent for damages are the same excepting only the allegations as to the specific damages to their respective properties. The facts alleged in the various complaints are set forth at length in *House* v. *Los Angeles County Flood Control District,* 25 Cal.2d 384 [153 P.2d 950], one of the cases in this consolidated group. The appeal in that case was from a judgment following the sustaining of a demurrer to the amended complaint without leave to amend. That decision does not determine any question presented on this appeal since it went no further than to hold that the amended complaint stated facts sufficient to constitute a cause of action.

Appellants alleged and the evidence showed that prior to the construction of the works asserted to have been defective and to have been the cause of the damage respondent had installed permeable dikes of piling and wire mesh along each side of the river and groins at right angles to the dikes. Trees, shrubs and other vegetation had grown along the banks of the river. The dikes, groins and riparian vegetation did not confine the water during a flood but they so restrained the flood waters that they flowed slowly over appellants' lands. There was a flood in 1934, which overflowed onto appellants' properties but by reason of the slow movement of the water there was no erosion. Between 1934 and 1938, the dikes, groins and riparian growth were removed and the bed and banks of the river were covered with sand and gravel over which small stone blocks were placed. When the flood occurred in 1938, the new installations were washed out, resulting in the overflow of the waters of the river and damage to appellants' properties.

Appellants' claim for recovery of damages is based on the allegation that the new installations were negligently planned, constructed and maintained, resulting in the taking and damaging of their property without compensation in violation of section 14 of article I of the Constitution of California.

The opinion of the trial judge on the motion for a new trial appears in the transcript and is a part of the record on appeal. (Rule 5(a) of Rules on Appeal, 22 Cal.2d 4.)

Appellants contend that the opinion contains inconsistent statements and that the trial judge inaccurately analyzed the evidence and incorrectly applied the law. We need not consider this contention. ■ While an opinion of the judge of the trial court will aid the appellate court in ascertaining the process by which a judgment has been reached it will not be considered in determining whether or not the verdict of the jury or the findings of the court are supported by the evidence. (*Buckhantz* v. *R. G. Hamilton & Co.*, 71 Cal.App. 2d 777, 781 [163 P.2d 756]; *Estate of Felton*, 176 Cal. 663, 667 [169 P. 392]; *Goldner* v. *Spencer*, 163 Cal. 317, 320 [125 P. 347]; *DeCou* v. *Howell*, 190 Cal. 741, 751 [214 P. 444].) The order when made by the court concludes the case and it cannot be impeached by the judge's opinion. The question that concerns the reviewing court is whether or not the final decision, judgment or order is correct and not whether the reasons expressed in the opinion are in harmony with the result reached or whether they sustain the decision. (*Buckhantz* v. *R. G. Hamilton & Co., supra.*)

■ Rule 5(a) makes the opinion a part of the record on appeal and thereby places it officially before the reviewing court for its consideration, but it does not modify the limitations found in the foregoing citations upon the effect to be accorded it. (*Redsted* v. *Weiss*, 73 Cal.App.2d 889, 891 [167 P.2d 735]; *Southern Cal. Freight Lines* v. *San Diego El. Ry. Co.*, 66 Cal.App.2d 672, 676 [152 P.2d 470]; *Williams* v. *Kinsey*, 74 Cal.App.2d 583, 601 [169 P.2d 487].)

Omitting any reference to the reasoning of the court the opinion recites that the motion was granted on two grounds: (1) Insufficiency of the evidence to justify the verdict of the jury and the judgment based thereon; (2) that the verdict and judgment are against law. If the order can be sustained on either ground we must affirm it.

Appellants maintain that the overflow in 1938 was greater and more violent than it would have been if the previously existing dikes and riparian growth had been permitted to remain. At the trial they conceded that their property was inundated and was damaged to some extent by the flood of 1934 before the dikes, groins and riparian growth had been removed. They further conceded that even though those structures had remained undisturbed in 1938, the flood in that year was of such volume and intensity that the water would have overflowed and covered their properties. They

assert that in 1938, a greater amount of water flowed over their land and that it traveled with greater speed and caused much more damage than would have been the case if the former structures had been permitted to remain.

In response to a statement of counsel for respondent and a query by the court, counsel for appellants admitted that respondent, if liable at all, was liable only for the difference between the amount of damage that would have occurred in 1938, if the old structures had not been removed and the amount actually suffered by appellants. Such is the law and we would so hold in the absence of such admission. The jury was so instructed by the court.

Since, if respondent was liable for any amount, a question that we find unnecessary to discuss on this appeal, the measure of appellants' recovery is not the total°damages suffered by them but is the differential between the damage that would have occurred in any event with former conditions unchanged and that which did occur, evidence was necessary from which the jury could determine (1) the amount of damages that would have been suffered by each appellant in 1938, if the conditions existing in 1934 had remained, and (2) the amount that each did sustain by reason of the flood of 1938. If the evidence showed that the damage actually suffered by any appellant was greater than it would have been if the old structures had not been removed and that the change in the restraining structures along the riverbed rendered respondent liable for damage, it devolved upon the jury to determine the difference and to render a verdict for such difference and no more.

An appellate court will not review, compare or evaluate evidence unless there has been an abuse of discretion in granting a new trial. We discover in the record no basis for finding that discretion was abused. It is trite to say that the trial judge saw the witnesses, considered their demeanor, their manner of testifying, and their candor or the lack of it, determined their credibility, and was the judge of the qualifications of expert witnesses.

There is evidence that the volume of the flood of 1938 was two and a half or three times the magnitude of that of 1934—one witness testified that it was four times greater. He stated that the peak discharge at one point was 58,000 second feet in 1938, and at the same point 14,000 second feet in 1934. The witnesses agreed that appellants' properties would have been inundated in 1938, in any event and that

the effect of the piling, wire dikes and riparian growth would have been to decrease the velocity of the water but that those installations would not have confined the waters within the channel. Appellants' witnesses agreed that there would have been inundation and overflow but expressed the opinion that there would have been no erosion. There was evidence of qualified hydraulic engineers that erosion would have occurred and that the damage would have been the same if not greater if the old dikes and riparian growth had remained in place in 1938.

There was evidence that the piles were driven in 1930, that the average life of a pile is 10 years, and that the strength and effectiveness of those piles as a barrier was just about exhausted in 1938. One witness testified that the current could have torn through the wire fencing and eroded behind the piles, taking out the brush and eventually resulting in failure of the structures to withstand the force of the water.

In view of the unanimous agreement of the witnesses that the land would have been inundated in any event, such items as damage to books, clothing, furniture and other personal property and damage to floors and walls of buildings, would have been sustained regardless of the presence or absence of the old structures and therefore cannot be recovered. The record does not show whether the jury included such amounts in their verdict.

Many of the cases cited by appellants have no application to the determination of the instant case. In *Hanlon Drydock & S. Co.* v. *Southern Pacific Co.*, 92 Cal.App. 230, 235 [268 P. 385], it is said that where damage is suffered the guilty party is not to be relieved merely because the extent of the damage cannot be accurately measured, and that where exact computation cannot be made it must be left to the good sense of the jury to form *from the evidence* the best estimate of the basis of compensatory damages that can be made under the circumstances. In *California Orange Co.* v. *Riverside Portland Cement Co.*, 50 Cal.App. 522, 528 [195 P. 694], the court said that if it is impossible to distinguish between the damages arising from the defendant's actionable injury and damage which had another origin, the jury should be left to make *from the evidence* the best possible estimate. Other cases containing similar language are cited. All of them are predicated on records containing *evidence* from which the damage could be estimated.

Cases are cited to the effect that where a defendant *by his own wrong* has prevented a precise computation, or by his misconduct has rendered accurate data unavailable, the jury may make a reasonable estimate *based on relevant data,* and that a defendant cannot complain that damages lack an exactness of measurement because he had not kept a complete record. Obviously, such cases are foreign to the questions presented in this action. There is no contention that any act of respondent, wrongful or otherwise, prevented a computation of appellants' losses or that its failure to keep records had anything to do with their damages or with their ability to offer proof of the amounts.

Appellants state in their brief that ten witnesses testified on their behalf that in their opinion appellants would have suffered no damage as a result of the flood of 1938, if the former protection had remained. These witnesses admitted that appellants' properties would have been inundated but assert that the waters would have had little velocity and no erosive force. Their brief also refers to the evidence of ten witnesses for respondent who testified that the damage in 1938 would have been as great had the former protective works been in place as was actually suffered by reason of the failure of the new installations to restrain the waters from overflowing. There was evidence that the flood was of such volume that appellants' lands would have suffered from erosion if the former structures had remained. There was evidence that the old piling would have withstood the force of the flood, and there was evidence that because of their age the piles had but little strength and probably would have been broken down by the waters. There was evidence that the flood was so great that the earth into which the piles were driven would probably have been eroded and that they would have been washed away, and there was evidence to the contrary. There was evidence of expert witnesses that the new channel afforded better protection than the old pile channel and that the latter would have offered much less resistance to the flood in 1938, than did the rock revetted embankment, and there were expert witnesses who reached the opposite conclusion.

It thus appears that the evidence was conflicting upon every question involved in the case excepting that it was agreed by all witnesses that a flood occurred in 1938, and that appellants' lands were inundated.

Appellants stress the fact that the jury awarded damages to them in amounts less than those to which they testified

they had suffered as indicating that the jury followed the instruction of the court and rendered verdicts for the difference between the damage suffered and that which would have resulted if the former protective structures had remained. We find nothing in the record to sustain this contention. In fact, insofar as we have been referred to the evidence, the jury awarded less than appellants demanded because the evidence would not have sustained recoverable damages in the amounts claimed. An example is where one of the appellants sought to recover $4,000 and the jury awarded only $1,000. The water covered the lower floor of his home to a depth of one and a half inches and he claimed the full cost of repairing the entire house, upper and lower floors, and painting it inside and outside, together with other excessive demands. Another appellant whose clothing and furnishings were damaged claimed the cost of the articles when new and not their value at the time of the flood. In allowing less than the damages testified to by appellants the jury merely deflated their demands to amounts that seemed more reasonable than those claimed, but it nowhere appears that they heard evidence upon or attempted to calculate the difference between the losses actually sustained and those that would have been suffered by reason of the inundation that would necessarily have occurred if no change had been made in the protective installations.

Since it is conceded that had the dikes and riparian growth remained there would have been some damage in 1938 by reason of the overflow that would inevitably have occurred, the jury should have been furnished with evidence upon which they could have based their calculations. The first verdict finding respondent liable for damages was merely a determination that if, during the second phase of the trial, evidence should be introduced as to the amount of damages suffered by appellants they would be entitled to verdicts for such amounts as were supported by the evidence. Respondent asserts that no evidence was offered on the question and appellants have not referred us to any part of the transcript where such evidence may be found. Respondent points out testimony of its witnesses that the damage would have been the same whether the old or the new installations had been in place. One of its witnesses testified that there might have been a difference of 10 per cent.

In response to appellants' expression of uncertainty

as to whether the actions must be retried upon the question of respondent's liability as well as upon the question of damages we advert to the conflict of the evidence as to liability which we have outlined, and to our statement in *Weck* v. *Los Angeles County Flood Control District,* 80 Cal.App.2d 182, 203 [181 P.2d 935, 948]: "No duty rested on the district to keep the water out of plaintiffs' lands, as contended by plaintiffs. The statute creating the district contained no mandatory direction to build public improvements of any particular character or design, or any improvement at all. Its failure to construct an impervious and indestructible wall along the wash was not an act constituting the taking or damaging of private property for public use for which compensation would be required."

The district is obliged to do no more than to exercise ordinary care in the erection and maintenance of its structures. It is not an insurer of the safety of persons or against injury to them (*Belcher* v. *San Francisco,* 69 Cal. App.2d 457, 463 [158 P.2d 996]) or against all possible damages that might be inflicted on private property. (*Curci* v. *Palo Verde Irr. Dist.,* 69 Cal.App.2d 583, 588 [159 P.2d 674]; *House* v. *Los Angeles County Flood Control Dist.,* 25 Cal.2d 384, 392 [153 P.2d 950].) It is not liable for damages caused by its property that in itself is not dangerous either in its construction or in its intended use merely because it may appear that it could possibly have been made safer by other means. (*Schmidt* v. *City of Vallejo,* 122 Cal.App. 5, 11 [10 P.2d 107].) Since it is admitted that in any event there would have been some damage in 1938, if the change in the protective installations did not result in a greater amount of damage in that year than would have been caused if there had been no change, respondent is not liable. (*United States* v. *Sponenbarger,* 308 U.S. 256, 265 [60 S.Ct. 225, 84 L.Ed. 230, 237].) Since the liability of respondent is thus delimited and since the evidence in the record before us as to its accountability is widely conflicting we cannot determine the question on this appeal.

We find no abuse of discretion in the granting of a new trial and the order is therefore affirmed.

Moore, P. J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 15, 1947. Carter, J., and Schauer, J., voted for a hearing.