[Civ. No. 8644. Third Dist. Dec. 8, 1955.]

WARD CHARTER et al., Appellants, v. JOSEPH LAWRENCE OLSON et al., Respondents.

Cooney & Littlejohn for Appellants.

Russell A. Harris for Respondents.

SCHOTTKY, J.—Plaintiff Ward Charter filed an action to recover damages for the death of his wife, Maud M. Charter, and plaintiff Joseph R. Schleich joined in said action to recover $200 for the destruction of his automobile which was being operated by the deceased at the time of the accident upon which the complaint was based. Plaintiffs' complaint alleged the negligence of the defendants in the operation of the defendants' automobile, and the answer of the defendants denied negligence and damage and alleged contributory negligence on the part of the decedent. Judgment was entered in favor of defendants in accordance with the verdict of the jury, plaintiffs' motion for a new trial was denied, and they have appealed from the judgment.

Appellants make two major contentions upon this appeal: Insufficiency of the evidence as a matter of law to sustain the verdict, and prejudicial misconduct on the part of defendants' counsel.

Before discussing these contentions we deem it proper to quote what we said in *Scott* v. *Nevis,* 120 Cal.App.2d 619, at page 621 [261 P.2d 797]:

"It is a rule too well established to require the citation of authorities that before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party which may be drawn therefrom, and excluding all evidence in conflict

therewith, it still appears that the law precludes such prevailing party from recovering a judgment. The evidence must be construed most strongly against the losing party. Every favorable inference and presumption which may fairly be deduced from the evidence should be resolved in favor of the prevailing party. The prevailing party's evidence must ordinarily be accepted as true, and evidence which is contradictory must be disregarded.

". . . [T]his familiar rule, . . . we are constrained to state, is too often disregarded by counsel who pay lip service to the rule and then proceed to argue the weight of conflicting evidence before an appellate tribunal. . . ."

The record shows that at the time this accident occurred, the respondents were traveling south on United States Highway 99W, a through highway, in their 1952 Mercury coupé, accompanied by Lawrence W. Maginnis and Darlene Maginnis, husband and wife, and David R. Lewis, en route from Milwaukie, Oregon, to El Cajon, California. They left Milwaukie about 7 p. m. on February 2, 1953. Respondent Olson drove 200 miles to Roseburg, Oregon, and then another passenger took the wheel and drove to Ashland, Oregon, where another passenger took over and drove to a point between Dunsmuir and Redding. Then Olson again took the wheel in the morning of February 3d and drove to the scene of the accident which occurred about 9:45 a. m. There is testimony that while not driving during the night Olson sat on the righthand side of the front seat and dozed part of the time. There is also testimony that Olson slept in the back seat.

The accident occurred at the intersection of United States Highway 99W, a north-south through highway, with College City Road, a county road running generally east and west; the intersecting road with United States Highway 99W is known as College City Road east of Highway 99W and as Hillgate Road west of Highway 99W. This intersection is located south of the town of Arbuckle. A Union Oil plant is located on the northeast corner of the intersection which obstructs cars traveling west on College City Road from the vision of a driver traveling south on Highway 99W for a point until within 30 or 40 feet of the highway. There is a very slight curve in 99W from the point of the intersection to the north. The visibility is not marred by anything for at least 700 feet north of the intersection. There is a stop sign on College City Road, just east of 99W, and it was customary in this community to stop at the east edge of Highway 99W before going across that highway in a westerly

direction towards Hillgate Road. Along the west side of Highway 99W, 220 feet north of the center of the intersection, there is a speed limit sign indicating the end of the 35-mile zone for southbound traffic.

The accident occurred on a foggy day; estimates as to the limit of visibility vary from a minimum of 150 feet up to a maximum of 1,000 feet, and the witness who originally estimated the distance at 1,000 feet modified his opinion as to visibility the day after the accident to 600 feet.

Olson was just picking up speed after leaving the end of the 35-mile zone south of Arbuckle, and was traveling approximately 40 to 50 miles per hour when he first observed the 1937 Chevrolet driven by Mrs. Charter. The Chevrolet was just pulling onto the east edge of the pavement of Highway 99W; the front of the car was on the east edge of the pavement and the rear of the car was on the gravel, and was 60 to 75 feet away. Mr. Olson did not see the Chevrolet approach the highway, as he was watching the road ahead. He did not notice the crossroad at this intersection. There was no sign warning him of the fact that he was approaching an intersection. He did not observe the Union Oil plant on his left until after the accident.

Mrs. Charter was driving appellant Schleich's car to the beauty parlor in Arbuckle, and traveled west on College City Road to Highway 99W. It was apparently her intention to cross Highway 99W and continue on down Hillgate Road to the next northbound and southbound street and make a right turn there. She was driving 10 to 15 miles per hour at the time she entered the highway and crossed in front of the approaching Olson automobile.

Upon seeing the Charter car, Olson immediately applied his brakes and his car continued straight ahead and he was still applying his brakes when the front end of the Olson car struck the right portion of the Chevrolet in the vicinity of the gas tank, just behind the right door and between that point and the rear wheel. At the time of the impact the Chevrolet car was across the southbound lane, with the front end of the Chevrolet extending west onto the gravel and Hillgate Road, and the rest of her car was occupying the southbound lane. The Mercury automobile made 60 feet of skidmarks that started north of the point of collision and extended to the point of collision and veered off in a southwesterly or westerly direction. The Charter car caught fire and was spun completely around, and then moved east along

the south side of Hillgate Road a few feet and came to a stop on the southwest corner. After the impact, the rear of the Olson car swerved east and stopped, facing generally west, straddling the white center line of 99W.

Mrs. Maginnis testified that just before the accident occurred there were northbound cars proceeding north on Highway 99W south of the intersection, and that she could see their headlights coming towards her.

The headlights of the Charter car and the parking lights of the Olson car were burning immediately after the accident. Olson did not sound his horn before the accident. He had his windshield wipers working in the fog before the accident but could not remember whether they were on and working at the time of the accident.

Mrs. Charter died three days after the accident as the result of personal injuries.

The only eyewitnesses to the accident were the occupants of the Olson automobile, although there were several arriving witnesses.

Appellants contend that Olson was negligent as a matter of law because, say appellants, he was driving at an excessive rate of speed while still within a town and while driving in fog and with limited vision, he failed to maintain a reasonable or proper lookout for approaching vehicles, he failed to keep his car under proper control while driving in fog and with limited vision, he failed to avoid the accident by turning off the highway to the left, he failed to sound his horn, and he had driven too many hours and miles without rest and was not in physical condition to be driving a car under the existing conditions.

In support of their contentions, appellants cite 6 Cal.Jur.2d, pages 665, 666, which states:

"It is the duty of a motorist to anticipate the presence of other drivers and travelers at any point in the street or highway and to keep his automobile under such control as will enable him to avoid a collision with persons using ordinary care. He must keep a proper lookout for them and, if the situation requires, slow and stop his vehicle. Where the situation so requires, he must apply his brakes or change the course of his car. He has no right to assume that the road is clear, but must at all times anticipate and expect the presence of others on the highway."

Appellants also cite *Hill* v. *Peres*, 136 Cal.App. 132 [28 P.2d 946], where the court said at page 137:

". . . The driver of an automobile is bound to use reason-

able care to anticipate the presence on the highway of others who have equal right to be there and the fact that his vision is temporarily interfered with, either by the glaring sun or headlights, does not relieve him from that duty.''

Appellant also quotes the following from *Dalzell* v. *County of Los Angeles,* 88 Cal.App.2d 271, at page 276 [198 P.2d 554] :

''. . . In driving an automobile in fog, the driver is required to exercise a degree of care that is to be expected of an ordinarily prudent person under the same or similar circumstances. In the case of *Salera* v. *Schroeder,* 183 Minn. 478 [237 N.W. 180], wherein the defendant was driving in fog, the court said at page 480 : 'Extreme caution was required by the circumstance of the moment—a degree of caution commensurate to the danger, which was great. . . . It is but ordinary prudence to exercise a high degree of care in the presence of imminent danger, when casualty is apt to come unless much care is exerted to avoid it.' In *Devoto* v. *United Auto Transportation Co.,* 128 Wash. 604 [223 P. 1050, 1052], it was said at pages 609-610 : '[T]hat, in driving through a fog bank, each driver must do so in a careful and prudent manner with due regard for the safety of others, and what is careful and prudent under the particular conditions shown will usually be a question for the jury.' ''

Appellants argue that accepting the facts as being true, including the testimony of Olson that visibility was 600 feet, the Charter car must have been in Olson's direct line of vision for 600 feet in approaching the intersection, and that Olson's failure to keep a lookout and his failure to see Mrs. Charter under the circumstances constituted negligence as a matter of law.

Appellants argue further that if Olson's statement taken two days after the accident by an adjuster to the effect that the visibility was only 150 feet and Olson's testimony that he was driving between 40 and 50 miles per hour is accepted, then Olson could not have seen Mrs. Charter approach Highway 99W until the last second before the accident, and he could not have stopped his car in less than 188 feet, and was, therefore, under the circumstances of visibility, violating the basic speed law of the state. (Veh. Code, § 510.) Likewise, if his statement of visibility as being 150 feet is accepted, Mrs. Charter could not have seen him except in the last second before the accident occurred.

Appellants argue further that in the present case the record

reveals that it was very foggy, yet Olson was picking up speed as he left town, and under the circumstances respondent Olson was negligent as a matter of law in picking up speed and driving at 40 to 50 miles an hour.

Respondents, in reply, cite *Scott* v. *Nevis, supra,* and discuss at length the well recognized principles as to the power of the appellate court on appeal and point out that in order for the appellants to obtain a reversal of the judgment on the ground of insufficiency of the evidence, they must show that, viewing the evidence most favorably to the respondents, the respondents were negligent as a matter of law; that Mrs. Charter was free from contributory negligence as a matter of law.

Respondents argue that the evidence viewed most favorably to the respondents showed that this accident occurred approximately 220 feet south of the 35-mile-per-hour zone; that the respondents' car was just picking up speed and traveling 40 to 50 miles per hour when Olson first observed Mrs. Charter's car just entering the east edge of the highway, 60 to 75 feet away; that Olson then applied his brakes as hard as he could; and that the visibility was 600 feet. They contend that whether Olson was negligent under these circumstances was a question of fact which the jury decided in respondents' favor. (*Furuta* v. *Randall,* 17 Cal.App.2d 384 [62 P.2d 157]; *Mitchell* v. *Southern Calif. Gas. Co.,* 122 Cal.App.2d 692, 697 [265 P.2d 118].)

Respondents maintain that it is a factual question for the jury as to whether Mr. Olson looked with proper care, and as to whether the Chevrolet was clearly visible so that he could have and should have seen it sooner than he did in order to have avoided the accident. They argue that the evidence warranted a finding that Mr. Olson was not negligent in failing to observe the Chevrolet sooner because of the fact that in the fog he was required to keep a careful lookout down the highway ahead; because the Union Oil plant blocked his vision of cars approaching the highway from the east until they got to a point near the easterly edge; and because there was no sign along the west edge of the highway warning Mr. Olson of a crossroad ahead, and he was unfamiliar with the fact that there was a crossroad at this point.

Respondents point out that there was testimony that there was oncoming traffic in the northbound lane, and argue that it was a question of fact whether Mr. Olson was negligent in failing to turn his car to the left to avoid this accident,

and that it was also a question of fact whether Olson was too tired to be driving.

Respondents argue also that in considering section 552 of the California Vehicle Code, which regulates the conduct of drivers crossing a through highway and the conduct of drivers on a through highway approaching an intersection, the question as to whether Mrs. Charter negligently entered the highway when the respondents were approaching so closely as to constitute an immediate hazard, so that she should have yielded the right of way to the respondents, or whether the respondents should have yielded the right of way to Mrs. Charter, is not a question of law, but was a question of fact for the jury to decide.

Respondents argue further that even if it could be held that the evidence is insufficient to support the implied finding of the jury that respondents were not negligent, the verdict can still be supported on the theory that the evidence is sufficient to support the implied finding of the jury that Mrs. Charter's contributory negligence proximately caused the accident. The question then arises whether the deceased, Mrs. Charter, was free of contributory negligence as a matter of law.

Appellants, however, contend that they were entitled to the benefit of the presumption that Mrs. Charter took all necessary precautions for her own safety and that there was no evidence produced at the trial to support a finding that Mrs. Charter was guilty of contributory negligence, nor was there any evidence produced that could be weighed against the presumption of care on her part.

Appellants and respondents agree that it is the law of this state that in an action for the wrongful death of an automobile driver, evidence of the decedent's conduct, which is sufficient to support a finding of contributory negligence, creates a conflict with the presumption of due care on the part of the decedent, the determination of which is for the jury.

■ We are satisfied that there is sufficient evidence in the record to create a conflict with the presumption of due care on the part of Mrs. Charter and to make the issue of contributory negligence on her part one for the jury to determine. There was evidence that the Chevrolet Mrs. Charter was driving started onto and across through Highway 99W when respondents' automobile was from 60 to 75 feet north and approaching at a rate of speed between 40 and 50 miles per hour; that the respondent Joseph Lawrence Olson then

applied his brakes as hard as he could, but struck the Chevrolet just behind the right door on the right side, when that part of the Chevrolet was in the center of Olson's southbound lane. The evidence also showed that the Mercury, driven by Olson, made 60 feet of skidmarks leading up to the point of impact, and that the Chevrolet, driven by Mrs. Charter, was traveling from 10 to 15 miles per hour as it started onto and across Highway 99W. As against the presumption that Mrs. Charter exercised due care there is evidence that when the front of the Chevrolet was at the east edge of the pavement it was going 10 to 15 miles per hour; that the Chevrolet was a 1937 model automobile, with the old style gearshift; and that cars stopping to cross Highway 99W generally stopped at the east edge of the pavement. The jury could have inferred that because an automobile, especially an older one, does not start from a standing position and immediately accelerate to a speed of 10 to 15 miles per hour in a matter of a few feet, Mrs. Charter did not stop at the stop sign on the day of the accident. The jury could also have inferred from the evidence that Mrs. Charter misjudged the speed and distance of the Mercury, or that she didn't see it at all, or she would not have started onto the highway at a time when she would have to wait only a second for the Mercury to pass; that she violated section 552 of the California Vehicle Code in that she started onto the highway when the Mercury was so close as to constitute an immediate hazard; that she failed to exercise ordinary care in watching the Mercury or in looking back to the north as she got onto Highway 99W, or in stopping, swerving, or accelerating her car in order to avoid the accident.

As hereinbefore pointed out, "every favorable inference and presumption which may fairly be deduced from the evidence should be resolved in favor of the prevailing party," and because of the evidence hereinbefore referred to and other evidence in the record, we are convinced that the questions of the negligence of respondents and the contributory negligence of the decedent were proper questions for determination by the jury. The jury was fully and correctly instructed as to the law applicable to these issues and their implied findings in favor of respondents on these issues find substantial support in the record. Appellants have made an earnest and able argument in their effort to prove their contention that the record does not sustain the judgment. If the verdict of the jury had been in favor of appellants their argument would be very helpful in pointing evidence in

support of such verdict, but in view of the adverse verdict of the jury upon the issues, the testimony relied upon by appellants merely accentuates the conflict in the testimony.

Appellants' second major contention is that the statements of defendants' counsel in his argument to the jury in reference to insurance constitute prejudicial misconduct.

Upon cross-examination of Olson, appellants introduced the extrajudicial signed statement of Olson as to the condition of visibility, which was prepared by the insurance adjuster representing the insurance company for the appellant Schleich. Olson testified: "Q. Did you make the statements that are set forth in the first two paragraphs? A. Yes, I did. That is the adjusters for the other insurance." No motion was made to strike this testimony. On redirect, counsel for respondents asked the following questions: "Q. And this statement that Mr. Cooney has introduced into evidence, where was that prepared? A. Where was that prepared? Q. Yes. A. In C. C. Thompson, Adjusters, office in Sacramento. Q. And did they hold themselves out to be the insurance investigators——" Whereupon appellants' objection was sustained as to that question.

Respondents' counsel was able to bring out the fact that the persons who took this statement persuaded Olson to accompany them back to their office in Sacramento where the statement was made. The insurance point was discussed with the court in the absence of the jury twice, and the court warned that any undue attempt to emphasize insurance would be error.

In his oral argument to the jury, referring to Olson's truthfulness in testimony, respondents' counsel stated:

"And to try to refute that, ladies and gentlemen, they bring in a statement prepared by an insurance adjuster representing Mr. Schleich that was taken in Sacramento. He went all the way to Woodland and then took him back to Sacramento for the sole purpose of trying to lay a foundation so that the liability insurance carrier would not have to pay him for the damages to that automobile."

Whereupon appellants' objection was sustained and the jury was instructed to disregard the statement.

Appellants quote from *Fleming* v. *Flick*, 140 Cal.App. 14, at page 31 [35 P.2d 210], as follows:

"The courts have frowned upon the unnecessary developing of the interest of a surety company in the trial of a damage case where the company is not a party to the suit.

This is especially true when the question of negligence is so doubtful as to leave reasonable inference that the evidence of the interest of the insurance company is likely to have prejudiced the jury, or when it appears that counsel for the plaintiff is not in good faith in presenting the evidence.''

They also quote from *Freeman* v. *Nickerson*, 77 Cal.App.2d 40, at page 54 [174 P.2d 688]:

''It is well settled in California that gratuitous references, either in the evidence or the argument, to the fact that a defendant carries liability insurance is prejudicial misconduct justifying a reversal.''

In the instant case it is to be noted that the first mention of insurance was brought out when appellants' counsel produced a written statement and, before introducing it in evidence, asked respondent Joseph Lawrence Olson if he had made it. Mr. Olson's response was: ''Yes, I did. That is the adjuster for the other insurance.'' On redirect examination respondents' counsel asked where the statement was prepared, and after being told asked if the adjuster named had ''held themselves out to be insurance investigators.'' Appellants' objection to the last question was sustained. In his argument to the jury respondents' counsel referred to this testimony in the language hereinbefore quoted.

We do not believe that upon the record here it can be held that respondents' counsel went beyond the bounds of legitimate argument, and certainly there is no indication that he was seeking to inject the issue of insurance into the case gratuitously or in bad faith.

In the case of *Walter* v. *England,* 133 Cal.App. 676 [24 P.2d 930], cited with approval in *Freeman* v. *Nickerson, supra,* the patient of a dentist, who subsequently was sued in a malpractice action, went to the dentist and suggested that, inasmuch as all that plaintiff wanted was reimbursement for expenses, the dentist go to the insurance company, tell them he had made a mistake, and get the insurance company to make the desired reimbursement. Evidence that the defendant thanked the plaintiff and then stated, ''I'll go down to my insurance company when I am in San Francisco and tell them that I have made a mistake . . .'' was held to be proper evidence. The court said at pages 688-689:

''It is a general rule that in this class of cases reference to the fact that a defendant is indemnified by a policy of insurance is prejudicial error, and the evil effect upon the jury of such a reference cannot be cured by striking out the testimony, nor by an admonition to the jury not to con-

sider it in any way. (*Rising* v. *Veatch, supra* [117 Cal.App. 404 (3 P.2d 1023)]; *Squires* v. *Riffe*, 211 Cal. 370 [295 P. 517]; *Citti* v. *Bava*, 204 Cal. 136 [266 P. 954].) This rule, however, does not prevent such evidence being proper where the conversation involves an admission of responsibility. (*King* v. *Wilson*, 116 Cal.App. 191 [2 P.2d 833]; *Harju* v. *Market St. Ry. Co.*, 114 Cal.App. 138 [299 P. 788]; *McPhee* v. *Lavin*, 183 Cal. 264 [191 P. 23]; *Lahti* v. *McMenamin*, 204 Cal. 415 [268 P. 644].) In the case before us the conversation amounted to an admission that the appellant had made a mistake. We have heretofore held that this admission, when considered with all the testimony in the case, is subject to interpretation as an admission of negligence, and the jury were the judges of its effect.

"The evidence having been properly admitted, we find no prejudicial error in referring to it in the argument to the jury."

In *Dullanty* v. *Smith*, 203 Cal. 621, the court said at page 625 [265 P. 814]:

"The fact that this testimony contained, in addition to unobjectionable matter, references to the insurance of defendant, did not necessarily make it inadmissible for all purposes. It is true that the court frowns upon any attempt to show that a defendant carries indemnity insurance, but where, as here, there is an entire absence of any indication whatsoever of lack of good faith on the part of plaintiff, evidence of this character, as an admission against interest, or for certain other purposes, may be received, notwithstanding the fact that it contains material which under other circumstances would be objectionable."

It appears from the record that appellants made the same contention as to misconduct on the part of respondents' counsel in support of their motion for a new trial, and the denial of said motion is an implied finding that respondents' counsel acted in good faith and that no prejudice resulted. It also appears that the court gave the following instruction:

"In the trial of this action questions have been asked and answers given in which a casualty insurance company is mentioned. No insurance company is a party to this action and whether any party is insured has no bearing whatsoever on any issue that you must decide. Therefore, the oath you took as jurors requires that you refrain from any inference, speculation or discussion about insurance."

We are unable to agree with appellants' contention that

there was misconduct on the part of respondents' counsel but we are also of the opinion that upon the record as a whole, and in view of the court's instructions, no prejudice resulted to appellants from the portion of the argument complained of.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.