[Civ. No. 23123.   Second Dist., Div. Two.   Oct. 16, 1958.]

SQUARE CAUSEY, Plaintiff and Appellant, v. ROBERT LEON CORNELIUS et al., Defendants and Appellants.

Hecker & Dunford and Bruce L. Wolfson for Plaintiff and Appellant.

Early, Maslach, Foran & Williams, Victor E. Williams and Donald J. Pierr for Defendants and Appellants.

ASHBURN, J.—This is an action to recover damages for personal injuries growing out of an accident between an automobile in which the plaintiff was riding and a truck and trailer of defendant Pacific Intermountain Express which was being operated by defendant Cornelius. The jury returned a verdict for $5,000 in favor of plaintiff.

The trial court granted defendants' motion for a new trial on the theory that counsel for plaintiff improperly and prejudicially injected and emphasized the question of insurance on the so-called *voir dire* examination of a defense witness (an investigator for defendants' insurer) who was called to testify concerning a telephonic recording made by the witness of a conversation he had with the driver of the car in which plaintiff was riding. Plaintiff has appealed from the order. Defendants have appealed from the judgment.

Plaintiff and two friends, White and Conway, drove to Fontana on the evening of December 4, 1955, to have dinner with friends. They ate at about 12 o'clock and left Fontana about 2 o'clock in the morning on their return trip to Los Angeles. The accident occurred about half an hour later on the Etiwanda Road between Fontana and Los Angeles when the car in which plaintiff was riding collided with the truck and equipment in question, which was some 57 feet in length. A light mist was falling at the time. Plaintiff's testimony is that the car in which he was riding was following the truck, traveling at about the same rate of speed; that the truck stopped a couple of times but the driver of the car, White, was able to avoid an accident by the sudden application of his brakes. White then decided to pass the truck but when he pulled out beside it he discovered a sign, "Stop Ahead,"

and realizing he could not pass the truck in the short distance between it and the sign decided to fall back behind the truck, whereupon it stopped suddenly and his car collided with the left rear of the truck, resulting in injuries to the plaintiff who was riding on the right side of the front seat.

According to the testimony of Cornelius, the truck driver, he made one stop in a normal manner for a boulevard stop about two miles from the scene of the accident; he later slowed down for a railroad crossing at which time he put on his blinker; as he came to the "Stop Ahead" caution sign he again put on his blinker lights and started slowing down; there was a warning sign on the right side of the highway and another painted on the highway itself, both about 500 feet from the intersection; before commencing to apply his brakes, he looked in his rear-view mirror and saw the lights of a car approximately 500 feet back; he gradually slowed down his trucking equipment until he reached a speed of 8 to 10 miles per hour when his vehicle was struck in the rear; the point of impact was 134 feet from the nearest line of the intersection. After the accident Cornelius went back to see if anyone in the car was hurt; White, the driver, was out of the car; according to Cornelius, White weaved back and forth as he walked; there was a strong odor of alcohol on the breath of all three men, but White was not "exactly drunk." Cornelius also said the other passenger, Conway, finished a Vodka bottle soon after the collision. Plaintiff testified that he had had one small drink of Scotch and milk at 4 o'clock in the afternoon, and had nothing else to drink; during that same period of time he and White had been together and the latter had done no drinking; that there was no bottle in the car when they left Fontana nor did they take turns drinking. White swore that he had had one bottle of beer in the morning and nothing else that day. Conway was in the east at the time of trial.

Officer Smith of the Highway Patrol testified that he detected no odor of alcohol on plaintiff, but the driver, White, had alcohol on his breath and there was a profound odor of same in the car. The officer gave White a roadside sobriety test which he passed; the officer concluded that, although White's ability was impaired, he was nevertheless able to drive a car properly. The witness saw no bottle. He further noted that the taillights on the truck were lighted and that the brake light was operative. The automobile left 32 feet of locked wheel skid marks.

The record of the hospital signed by the doctor where plaintiff was taken showed that his "[a]ctions support intoxication; odor of alcohol; cooperation poor. . . ."

The so-called *voir dire* examination of the investigator (Weaver) was as follows: "Q. Mr. Weaver, you say that you are an investigator? A. Yes, that's correct. Q. Working for whom? A. The Truck Insurance Exchange. Q. Is that an insurance company? A. Right. Q. And you were told by that insurance company to make this recording? A. Well, that was part of the job of investigating the accident, yes, interviewing Mr. White. . . . Q. Yes. Now, this investigation that you made for this insurance company, was that made in reference to the accident that occurred on December 4, 1955? A. Yes, it was in connection with that accident. . . . Q. At the time you informed Mr. White who you were you didn't tell him you were working for an insurance company, though, did you? A. No, I did not. I told him I represented the Pacific Intermountain Express [the other defendant], which, of course, I did. Q. Through the insurance company? A. I didn't say that I represented them through the insurance company. I said I represented the Pacific Intermountain Express."[1] Counsel for defendant neither objected to this testimony nor did he move to strike the questions and answers.

We shall first consider the propriety of the court's ruling on the defendant's motion for a new trial.

The trial judge, though expressing the opinion that the verdict was wrong, expressly refused to base the granting of the new trial upon the ground of insufficiency of the evidence and caused a minute order to be entered granting the motion "on the grounds that plaintiff introduced insurance into the case and thereby prejudiced the jury in the plaintiff's behalf." The evidence is such that we would feel obligated to affirm the order had the ruling rested upon insufficiency of the evidence to support the verdict, but the form of the order precludes our considering insufficiency of evidence as a ground for sustaining the ruling. (Code Civ. Proc., § 657.) The ruling as made does not square with the authorities or with sound judicial administration.

█ In the first place, the questions concerning insurance (assuming *arguendo* that they were improper) could not be capitalized upon motion for new trial because of the fact that

---

[1] These questions were not in immediate sequence as the above quotations might seem to indicate.

no objection was made to any of them, no motion made to strike any question or answer, no motion for a mistrial, and no cautionary instruction to the jury requested. In *Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 813 [117 P.2d 841], the cross-examiner brought out the fact that defendants' representative told plaintiffs immediately after the accident that defendants were insured. No objection or motion having been made at the time, defendants' counsel, after the witness was excused and both parties had rested, charged plaintiffs' counsel with misconduct and moved for a mistrial, which was denied. The Supreme Court held there was no error in this ruling, saying at page 813: "Defendants urge, however, that the injection of insurance into the case was done by plaintiffs' counsel designedly and with the intent to influence the jury, and that therefore prejudicial error was committed. But even assuming that error did result, we do not believe that the defendants may successfully claim prejudice in view of all of the circumstances. It will be remembered that no objection was made by defendants until after the witness Meyers left the witness stand, and that even then defendants never at any time made a motion to strike either the question or the answer or asked the court to instruct the jury to disregard the reference to insurance. In fact they expressed the thought that they did not want the jury so instructed. They contented themselves with a charge of misconduct and a motion for a mistrial made after the witness was excused and at the close of the evidence in the case. The court on its own initiative instructed the jury that insurance was not involved in the case." The judgment was affirmed. In the case at bar the court at defendants' request and at the close of the case instructed the jury as follows: "You are reminded that no insurance company is a party to this action and that whether (either) (any) party is insured has no bearing whatsoever on any issue that you must decide. Therefore, the oath you took as jurors requires that you refrain from any inference, speculation or discussion about insurance."

In *Gluckstein* v. *Lipsett*, 93 Cal.App.2d 391 [209 P.2d 98], a physician upon cross-examination brought out the existence of insurance. In rejecting the claim of prejudicial misconduct the court said, at page 404: "It is obvious that defendant did not give the court a chance to rule or to admonish the jury. It is also obvious that the witness was a bit anxious to volunteer statements which he thought would help the plaintiff's case. The failure of the defendant to ask for a ruling on his

assignment of misconduct would indicate that he did not consider it particularly serious at the time. Also he should have asked that the testimony be stricken from the record, as was done in *Packard* v. *Moore*, 9 Cal.2d 571 [71 P.2d 922].'' And at page 405: ''It is not reasonable to assume that the verdict would have been any different if the witness had not made this statement.'' The judgment was affirmed.

In *De Liere* v. *Goldberg, Bowen & Co.*, 30 Cal.App. 612 [159 P. 197], the attorney for plaintiff, when examining the jurors on *voir dire*, had said defendant was indemnified by a named insurance company against liability for injuries such as those involved in the action. Considering the claim of prejudicial misconduct the court said, at page 614: ''We do not, however, deem it necessary to determine this disputed question in the instant case, for the reason that the record discloses that during a later stage of the trial the fact that the defendant was indemnified by the particular surety company adverted to was permitted to go before the jury in the form of evidence without objection, and that such evidence came from the lips of one of the defendant's own witnesses. This fact, taken with the further fact that the court did, in the earlier stages of the case, expressly instruct the jury to disregard all references to outside parties and confine their deliberations to the issues between the actual parties before the court, impels us to the conclusion that the question and suggestions of plaintiff's counsel cannot be held to have amounted to such prejudicial misconduct as to justify a reversal of the case.''

*Hoel* v. *City of Los Angeles*, 136 Cal.App.2d 295, 307 [288 P.2d 989], does not control this case, for the facts calling for the trial judge's intervention were materially different from the situation at bar; and the case did not deal with any question of insurance. The general rule that one cannot complain of evidence which he permitted to be received without objection (*Mullanix* v. *Basich*, 67 Cal.App.2d 675, 682 [155 P.2d 130]; *Kershaw* v. *Tilbury*, 214 Cal. 679, 691 [8 P.2d 109]; *Wills* v. *J. J. Newberry Co.*, 43 Cal.App.2d 595, 607 [111 P.2d 346]) governs here.

It is time for a reappraisal of this insurance bugaboo. The first California case that announced it seems to be *Roche* v. *Llewellyn Iron Works Co.*, 140 Cal. 563, 574 [74 P. 147], which was decided in 1903. This case and subsequent similar rulings are explained in 10 California Jurisprudence 10-Yr. Supp., section 29.1, page 629, as follows: ''*The theory* on

which the cases hold such an inquiry improper—and in some circumstances prejudicial—is that there is such a strong popular prejudice against surety or other insurance companies that juries trying issues in an action in which the liability of such corporations is sought to be established are apt to permit their judgment to be improperly swayed by such prejudice. In other words, the courts assume that a jury is more inclined to find a verdict against a defendant if it believes that he is indemnified than would be the case if it were understood that the defendant alone would be required to satisfy the judgment." Automobiles and automobile liability insurance were in their infancy when Roche, *supra,* was decided in 1903. "Certainly the public acquaintance with and attitude towards liability insurance is far different today than it was in the days of the Wiersema decision—1909. Its existence and impact upon our civilization is one of the facts of life." (*Pinkerton* v. *Oak Park Nat. Bank,* 16 Ill.App.2d 91 [147 N.E.2d 390, 394].) ■ This insurance rule, built upon the theory of prejudice against corporations and especially insurance corporations, has largely outlived its purpose and its justification.

So far as we are advised this is the only type of case in which the trier of fact is not entitled to know the identity of the real party in interest. Under familiar forms of liability insurance policies the defense of an action against the insured is wholly controlled by the insurer; it selects and pays the attorneys, picks the witnesses, determines whether to compromise the case, retains the right to call upon the assured for such assistance as it wants, bars him from otherwise intervening in the conduct of the case, through its own attorneys and agents conducts the trial throughout, likewise conducts any appeal and pays any final judgment up to the limit of the coverage.

Today this insurance problem presents a strange picture. As soon as the subject of insurance is mentioned in the evidence many defense lawyers, particularly the younger ones, call for a bench conference and move for a mistrial—not because they want it (for they do not yet have any indication of what the outcome will be), but in order to "protect" the record against an adverse verdict. This is a daily occurrence. The underlying theory is that the jurors must not know who the real defendant is. While this has been going on in the court house, certain insurance companies in recent years have waged a campaign in the Saturday Evening Post and in Life magazine, designed to reach one out of three potential jurors

(more than 70 million persons in all),[2] urging them to be conservative in their verdicts when serving as jurors,—to carry into the jury room the thought of insurance and to consider the impact of large verdicts upon their own insurance premiums. We quote a few such passages taken from the opinion in *People* v. *American Automobile Ins. Co.*, 132 Cal. App.2d 317 [282 P.2d 559] : " 'Next time you serve on a jury, remember this: When you are overly generous with an insurance company's money, you help increase not only your own premiums, but also the cost of every article and service you buy.' " (P. 319.) " 'Your Insurance Premium is Being Determined Now. This could be any courtroom in the country—Behind the locked door, twelve men and women are reaching a verdict involving a defendant protected by a casualty insurance company. What they decide affects your pocketbook. . . . Casualty insurance companies have been losing an average of $11 on every $100 of earned automobile liability premiums. More accidents are partly responsible. So are excessive jury awards, rendered by jurors who feel they can afford to be generous with the "rich" insurance company's money. Actually, jurors who are responsible for awards in excess of what is just and reasonable are soaking *you* by raising insurance rates.' " (P. 320.)

The only justification for the rule excluding (with limitations) evidence of the existence of insurance is the supposition that jurors will be led into excessive verdicts if they become aware of defendant's insurance coverage. Today this is a naive conceit. The use of automobiles has increased so prodigiously since 1903 and compulsory liability insurance, or almost compulsory insurance, such as our own Financial Responsibility Law (Veh. Code, §§ 410-418.5) and Security Following Accident statute (Veh. Code, §§ 419-423.1), has become so common that jurors naturally assume as they enter the jury box that defendant is insured against liability. Years of trial experience have shown it to be commonplace, rather than exceptional, for some juror, when asked on *voir dire* if he or she has ever been a party to a claim for damages for personal injury or property damage growing out of an automobile accident, to say : "Yes, but nobody was injured and my insurance company took care of it," or : "Yes, but the insurance companies got together and settled the matter." Volume 5,

---

[2]See quotation at page 321 of *People* v. *American Automobile Ins. Co.*, 132 Cal.App.2d 317 [282 P.2d 559].

Stanford Law Review, at 144: "Even if there is no mention of insurance during the trial, the common knowledge of the jurors that most automobile owners are insured must be considered.[15]" The footnote includes this: "The California Department of Motor Vehicles estimates that 80% of California motorists carry liability insurance. Letter of August 7, 1952, on file with the *Stanford Law Review*."

Our courts have taken cognizance of this fact from time to time. "It is not contended the verdict is excessive. Under the circumstances of this case we may not assume the plaintiffs were prejudiced by the question and answer complained of. It must be true that all jurors know most owners of automobiles carry indemnity insurance these times when motor vehicle accidents are so common." (*Toomes* v. *Nunes,* 24 Cal.App.2d 395, 399 [75 P.2d 94].) "While attorneys may not deliberately drag in the fact that defendants are protected by an insurance company, it is very generally known in these days to every person of understanding, that most owners and operators of automobiles are now protected by some form of insurance, and particularly do they believe that common carriers operating large trucks upon the highways are so protected, so we do not believe that the questions and answers heretofore referred to could have made any difference in the final outcome of the case, or in the amount that the jury awarded." (*Moniz* v. *Bettencourt,* 24 Cal.App.2d 718, 725 [76 P.2d 535].)

Concerning the refusal of an instruction to the effect that no insurance company is a party to the action, it is said, in *Risley* v. *Lenwell,* 129 Cal.App.2d 608, 656 [277 P.2d 897]: "While we believe that the court might well have given the requested instruction we do not believe that upon the record in the instant case the failure to give it constitutes reversible error. The jury of course knew that no insurance company was a party to the action, and as stated by this court in *Moniz* v. *Bettencourt,* 24 Cal.App.2d 718 [76 P.2d 535], it is very generally known to every person of understanding 'that common carriers operating large trucks upon the highways are so protected [by insurance].' We do not believe that the failure to give the requested instruction affected the final outcome of the case or the amount awarded."

*Lahti* v. *McMenamin,* 204 Cal. 415, 422 [268 P. 644]: "But when the fact that defendant carries insurance is properly brought to the knowledge of the jury, either by the evidence on the part of the defendant, or indirectly in connection with

proof of some material fact in the case, we know of no rule of law that empowers any court to set aside the jury's verdict upon the assumption that such evidence might have influenced the jury in rendering a verdict which was excessive in amount. If the verdict of the jury is excessive, then it should be set aside by the court, no matter what may have prompted the jury in the rendition thereof. On the other hand, if the verdict is not excessive, as we have held to be the case in this action, then it should be sustained notwithstanding the fact that there is evidence in the record which might have tended to influence the jury in allowing excessive damages.''

Mr. Justice Carter, dissenting in *State Farm etc. Ins. Co.* v. *Superior Court*, 47 Cal.2d 428, 436 [304 P.2d 13], had this to say: ''Moreover, with all the recent publicity that has been given to insurance in automobile accident cases, stressing the effect on premiums for such insurance, it cannot be said that jurors are ignorant on the subject, nor that the insurers want them to be. The claimed danger of injection of insurance into the case has lost much of the sting assumed to exist formerly. In recent widespread publicity jurors have been told generally not to give large awards of damages and to avoid giving any except in the clearest cases. While it is true that in an ordinary personal injury action, with minor exceptions, the existence of insurance is not material to any issue, it must be assumed that the jurors know that all motorists carry insurance.''

Volume 2, Witkin, California Procedure, section 12, page 1738: ''[I]t seems highly unrealistic to suppose that automobile-owning jurors are unaware of the position of insurers in the defense of personal injury actions, particularly since the recent inauguration by these companies of a national publicity campaign against high verdicts. And in operation the rule is largely one of form and tactics, for there are a number of situations in which the reference is either entirely proper or, if improper, does not constitute reversible error.''

Volume 11, Southern California Law Review, at 414: ''Indeed, no case can be found which goes to the extent of holding that the wrongful injection of insurance is prejudicial *per se.*''

Volume 4, American Law Reports, 2d 761, anno., at 764: ''[I]n view of the fact that most automobile owners now carry liability insurance covering operation of their automobiles, the probability of prejudice resulting in the minds of the jury from some suggestion that the defendant in an automobile accident case carried liability insurance does not seem so real

as it formerly did. While the courts still are careful to prevent unwarranted injection of the liability insurance factor, the more recent cases indicate less of a tendency to regard error in this regard as beyond cure by proper action of the trial judge." At 817: "In view of the present almost universal custom among automobile owners of protecting themselves from liability for damages resulting from negligence in the operation of their automobiles by procuring liability insurance, and of the general knowledge of jurors of the prevalence of such a custom, it is probable that a reference by plaintiff's counsel suggesting that defendant is insured is not as prejudicial to the right of a defendant to a fair and impartial trial as heretofore."

As shown above, defendants called as their witness one Weaver who stated on direct that he was an investigator and as such had a telephone conversation with Fate White, the owner and driver of the car in which plaintiff was riding, and that he made a recording of the interview with White's consent. When the recording was produced plaintiff's attorney requested and was granted leave to examine the witness on *voir dire*. It started as follows: "Q. Mr. Weaver, you say you are an investigator? A. Yes, that's correct. Q. Working for whom? A. The Truck Insurance Exchange. Q. Is that an insurance company? A. Right." There was no impropriety in counsel's reference to insurance up to this point. Plaintiff's counsel was entitled to ascertain for whom Weaver was working when he made the recording of his telephonic conversation with White. And when Weaver replied that he was working for the Truck Insurance Exchange, counsel was entitled to inquire whether that was an insurance company. The witness first used the word "insurance" and counsel rightly clarified the identity of the witness' employer. (*Cf. Cozad* v. *Raisch Improvement Co.*, 175 Cal. 619, 624 [166 P. 1000]; *Reneau* v. *Hirsch*, 88 Cal.App. 1, 8 [262 P. 1100]; *Wilson* v. *Fredericksen & Kasler*, 94 Cal.App.2d 361, 364 [210, P.2d 741]; *Moffitt* v. *Ford Motor Co.*, 135 Cal.App. 7, 17 [26 P.2d 661]; *Brown* v. *McCuan*, 56 Cal.App.2d 35, 40 [132 P.2d 838]; *Charter* v. *Olson*, 137 Cal.App.2d 636, 646 [290 P.2d 867].)

Counsel mentioned the insurance company four more times. The trial judge held it was improper for plaintiff's attorney to bring out the fact of insurance in the first instance, that he should have confined himself to showing that the witness was acting on behalf of the defendant,—i.e., the nominal one, not

the real party in interest. In the circumstances here present, neither the first mention of insurance by counsel nor later repetition could amount to prejudicial misconduct; repetition of a known fact adds little if anything to the effect of knowledge already possessed. True, the subject of insurance, like the wealth or size of defendant or inflammatory pictures of a plaintiff's injuries, may be so presented as to be objectionable because of a tendency to lead the minds of the jurors away from the real issues; but such matters are easily controlled by the trial judge. If counsel's repeating of the phrase ''insurance company'' was deemed by the judge to be inflammatory he should have dealt with it like any other improper evidence, by prompt exclusion or prompt admonition to counsel and cautionary instruction to the jury. The ruling at bar was in point of law an abuse of discretion.

It is said that this cross-examination was not in fact *voir dire*. That may be true, but no such objection was made and counsel's avowed effort to show prejudice and bias of the witness was in some measure justified by later developments. Objection to receipt of the recording in evidence having been overruled, and playing of same having been started, the court soon interrupted and ruled that it was unintelligible so far as White's statements were concerned. It was decided to play the record again and the judge promptly stopped it, saying: ''Let the record show that the Court stood directly over the recording machine,—the Court's hearing is average and is good, according to doctors—and that the Court could not distinguish the answers of Mr. White, and the only reason that they were intelligible at all was because the investigator, Mr. Weaver, repeated them after Mr. White gave the answer, so that we are not getting audibly the answers given by Mr. White in that conversation, and the record is therefore not admissible.'' This condition of the record would reflect directly upon the transcript of same to which the witness referred to refresh his memory. The examination having been conducted without objection from defendants, they cannot now be heard to say it was not *voir dire* or that that fact is of any consequence.

The examination in question occurred in the afternoon. The next morning, in chambers, the court opened the subject, saying: ''I don't think it makes much difference in this case. But, in the Court's opinion, Mr. Wolfson, you went way too far in questioning that investigator the other day as to his insurance company connections, and so far, in the Court's

opinion, if the jury brings in any verdict against both defendants, which they have to do,—they have to bring it in against either both or none—The Court will grant a motion for a new trial so far as the individual defendant is concerned, in other words, so far as Mr. Cornelius is concerned, on the basis that your questions were prejudicial so far as Mr. Cornelius is concerned. Now, they came awfully close to being prejudicial, in the Court's mind, as far as the freight company was concerned. The only reason that I wouldn't grant a motion for a new trial, unless I change my mind—and I haven't made a final determination on it—but where you have a corporation involved, if the corporation is a substantial corporation of any size I don't think that the fact that there is insurance materially affects the verdict so far as the corporation is concerned." Counsel for defendants made no motion for a mistrial, no request for special instruction to the jury, no comment whatever, but elected to speculate upon a verdict for defendants, as the judge himself obviously was doing. Counsel had no right to do that. If he considered the examination as prejudicial he should then, at the latest, have sought to undo the harm by obtaining an appropriate oral instruction to the jury or even by declaration of a mistrial, but he could not remain silent and speculate upon the verdict. "It does not behoove a litigant to observe an error being committed and sit idly by and not mention it to his attorney or the court. Should he do this he puts himself in the position of saying: 'If I win I will say nothing; if I lose I will raise the error.' This is not fair to the court and the litigant should not be permitted to take advantage thereof." (*Kershaw* v. *Tilbury*, 214 Cal. 679, 691 [8 P.2d 109].)  ▉  "A party should not be permitted to remain quiet and take the chance of a favorable verdict, and then, if the verdict is unfavorable, raise the objection on appeal." (*Aydlott* v. *Key System Transit Co.*, 104 Cal.App. 621, 628 [286 P. 456].)

▉ If the cross-examiner's references to insurance were deemed by the court to be improper, it was the duty of the judge to act promptly and to then admonish counsel and instruct the jury;[3] it was no more appropriate for the judge

---

[3] "Many decisions justify an affirmance of the judgment upon the ground that the trial court admonished the jury to disregard the objectionable evidence. It is stated that an appellate court will not assume that members of the jury disregarded their oaths and failed to follow the admonition." (11 So.Cal.L.Rev. p. 417.)

"Although some of the earlier cases appear to have taken a rather narrow view regarding the curing of error in this regard by instructions to

to speculate upon a defendant's verdict than it was for defense counsel.

█ At the argument of the motion for new trial plaintiff's attorney, foreseeing the judge's ruling, offered to dismiss the case as to the individual defendant, Cornelius, who was the driver of the corporate defendant's truck. This the court rejected. At a later hearing on the same motion counsel for plaintiff offered to give Mr. Cornelius a covenant not to hold him liable on the judgment ''and thus eliminate the prejudice that you have been referring to as Mr. Cornelius' liability.'' But the judge said: ''That doesn't cure the problem because the liability of the company is based solely on the liability of the defendant Cornelius. . . . The point is that the jury might never have rendered this verdict if they thought that Mr. Cornelius was going to be liable, might never have rendered it at all if they thought Mr. Cornelius was liable. They figured that because of the insurance involved that Mr. Cornelius would not be liable and so they were willing to render the verdict.'' Counsel for defendants was given no opportunity to accept or reject this offer. The judge had made up his mind to grant the motion. We think the acceptance of the offer would have cured the (assumed) error. Speculation as to the jurors' reasoning, postulated upon the assumption that they obeyed the instruction that the verdict must be for or against both defendants but ignored the one to the effect that the presence or absence of insurance should not be considered, was improper.

The order granting a new trial must be reversed.

█ The judgment must be affirmed. The only argument presented in support of the defendants' appeal from the judgment is that the court erred or abused its discretion in refusing to grant the motion for new trial upon the ground of insufficiency of the evidence. With this we are unable to agree. Upon this matter there was room for exercise of a broad discretion (4 Cal.Jur.2d § 600, p. 479), and in that re-

disregard the evidence, remarks, questions or suggestions of insurance, the general rule now appears to be that in the absence of anything indicating the verdict returned was adversely affected, or anything to indicate persistent and studied attempts to bring the objectionable matter before the jury, prompt action in striking improper references to the defendant's insurance from the record, coupled with instructions admonishing the jury to disregard such matters, sufficiently protects the defendant's rights without requiring reversal of the judgment.'' (4 A.L.R.2d p. 821.)

spect it cannot, upon this record, be said that there was an abuse of discretion.

The trial judge said in part: "In other words, had I been deciding the case without a jury, I would have decided on the basis of the evidence that there was assumption of risk, and because of that assumption of risk I would have given a judgment for the defendant. But I am not of the opinion and was not of the opinion at the time of the last hearing and so stated on page 10—I am not of the opinion that the evidence was so clearly in favor of the defendant that I should grant a motion for a new trial on the basis of the verdict being against the weight of the evidence, clearly against the weight of the evidence. In other words, the Court in order to grant a motion for a new trial has to do more than disagree with the verdict of the jury. The Court has to be of the opinion that the verdict is clearly against the weight of the evidence, and I don't think it was." This is a sound appraisal of the cases. *Green* v. *Soule,* 145 Cal. 96, 103 [78 P. 337]: "Of course, the judge should give due respect to the verdict of the jury, and may sometimes properly deny a new trial in cases where if submitted to him without a jury he might upon the evidence have made a different decision. He must be clearly satisfied that the verdict is wrong; otherwise, he should let it stand." See also *People* v. *Richard,* 101 Cal.App.2d 631, 633 [225 P.2d 938]; *Stone* v. *Los Angeles County Flood Control Dist.,* 81 Cal.App.2d 902, 905 [185 P.2d 396]; *Imperial-Yuma etc. Credit Assn.* v. *Shields,* 74 Cal.App.2d 932, 935 [169 P.2d 671].

The order granting a new trial is reversed and the judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

The petition of defendants and appellants for a hearing by the Supreme Court was denied December 10, 1958. Shenk, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.