[Civ. No. 17146. Second Dist., Div. One. Oct. 31, 1949.]

J. R. WILSON, Respondent, v. P. C. FREDERICKSEN AND C. E. KASLER (co-partners) et al., Appellants.

A. H. Brazil for Appellants.

Walch & Griswold, Sidney J. W. Sharp and Herbert M. Braden for Respondent.

DRAPEAU, J.—October 2, 1947, a modern four-lane highway was being constructed on State Highway 101 in San Luis Obispo County. At a point a mile or two north of the city of San Luis Obispo, the construction contractors had placed barricades across the old pavement and provided a detour or by-pass in the dirt alongside the old pavement. Kerosene flares were closely placed along the barricades across the pavement.

The detour was about 500 feet in length, and from 32 feet minimum to 50 feet maximum in width. Kerosene flares were also placed at short intervals along each side of the detour. The detour was sprinkled with water several times a day by the contractors.

About 6:30 in the evening, the plaintiff, driving a Chevrolet pickup truck was going south toward San Luis Obispo. At that time vehicles using the highway had their lights on, and the kerosene flares were burning. Reaching the detour, the plaintiff drove off the pavement and onto the dirt roadway between the lighted flares.

At approximately the same time, the defendant Jones was going north, driving a Willys sedan, hauling a house trailer. There is no evidence of undue speed of any of the parties. Jones was following a big boxcar truck, equipped with 12 or 14 wheels. As the truck went through the detour, it caused a thick, whirling cloud of dust to rise. The dust was so pervading that it obscured the vision of the plaintiff. He first stuck his head and shoulders out of the pickup the better to see where he was going, and, then, to avoid the dust, he elevated the glass window of his pickup on the driver's side. About 100 feet after the plaintiff passed the big truck, his pickup, the Willys, and the house trailer collided.

The pickup was damaged extensively, and the plaintiff suffered severe personal injuries. His left arm was fractured at the elbow, and it is doubtful if he will ever have much use of the arm any more.

The plaintiff, and his wife, who was riding with him, testified about the dust; also that he was driving as close as possible to the flares on his right side of the detour, and that the defendant Jones ran into him.

The defendant Jones, and his wife, who was riding with him, testified that their car was traveling close to the flares on their right-hand side of the detour; that there was no dust; and that the plaintiff ran into their car and trailer.

A traffic officer who went to the scene shortly after the accident testified that the dust was bad, and that he telephoned the office of the Highway Patrol in San Luis Obispo to have the barricades changed to a different angle across the pavement, and to have the detour sprinkled. This was done later that evening.

Other witnesses testified to the condition of the detour: those for the plaintiff as to its dangerous and dusty condition; those for the defendants that the dust wasn't so bad, and, anyhow, that there was no driving danger caused by the dust.

The trial judge found for the plaintiff and against the defendants Jones and the contractors; judgment followed; and all of the defendants appeal.

The work was being done by the contractors under a contract with the State of California which imposed upon them the duty to maintain the highway being improved in a reasonably safe condition. The contract also required the wetting down of dusty roadways during the course of construction so as to make them reasonably safe for travel.

The evidence supports the findings of the trial court. Therefore, under the substantial evidence rule, these findings must be upheld by this court.

■ Appellants complain of a ruling of the trial court relative to a question of insurance. The situation may be stated by quoting from appellants' brief as follows:

" 'Mr. Braden. Q. Is it your testimony that you have not discussed your testimony here with any representative of the United Pacific Insurance Company?

" 'Mr. Brazil. Just a moment. If your Honor please, I think that is a highly improper question on the theory that it doesn't make any difference whether he did or not, and that the only basis of a question of that kind is to impeach, and he should relate the specific conversation that he is dealing with, and not ask him the general question of that kind.

" 'Mr. Braden. I think, if the Court please, it would only go to test the credibility of this witness.

" 'The Court. Well, let him answer. Read the question to him. (Question read.)

" 'A. I did discuss it to a certain extent.'

"The Court finally sustained our objection—but plaintiff's counsel had successfully put before this Court that an insurance company was interested in the case."

As stated in appellants' brief, defendants' objection was sustained. So, in any event, the trial being before a judge, no harm was done. ██ Moreover, if a representative of an insurance company talks with witnesses who are to testify in a trial in which that insurance company is interested, that fact, if relevant, competent and material, becomes admissible in evidence upon the trial. The law does not give anyone the privilege of talking with witnesses in a case in which he is interested, upon the assumption that opposing parties may not inquire into the fact or details of such a conversation, when such inquiry is pertinent and proper for the purpose of testing the credibility of witnesses, weighing their testimony, or for any other lawful reason. Even if defendants' objection had not been sustained, the testimony was presented to the trial court in a legitimate manner and for a legitimate purpose. (*Moffitt* v. *Ford Motor Co.*, 135 Cal.App. 7 [26 P.2d 661].)

The judgment is affirmed.

White, P. J., and Doran, J., concurred.